[No. 1248.  Decided April 21, 1894.]

THE STATE OF WASHINGTON, *on the relation of A. J. Smith*, v. W. T. FORREST, *Commissioner of Public Lands of the State of Washington.*

TIDE LANDS — IMPROVEMENT BY ARTIFICIAL OYSTER BEDS — APPLICATION TO PURCHASE — JURISDICTION OF STATE BOARD.

The state board of land commissioners has no jurisdiction to pass upon the right of an applicant for the purchase of tide lands which he claims to have improved as an artificial oyster bed, when the hearing is not based upon a contest nor upon an appeal, but is founded upon a protest of citizens, setting up that the lands are natural oyster beds, as the commissioner of public lands is vested by law with the duty of determining what lands are subject to sale. (HOYT, J., dissents.)

The act of 1891, directing the reservation of natural oyster beds, does not require a suspension of sales of tide lands until the oyster reserves have been defined and plats filed; and where the county appraisers have neglected to note on the tide land maps that certain land is an oyster reserve, the commissioner of public lands is warranted in presuming that such land is subject to sale. (HOYT, J., dissents.)

An applicant for the purchase of tide lands, which he or his assigns had improved as an artificial oyster bed prior to the act of

March 26, 1890, giving a right of purchase, must prove to the satisfaction of the commissioner of public lands that such land was not a natural oyster bed at time of entry thereon.

*Original Application for Mandamus.*

*Wickersham & Reid*, and *N. S. Porter*, for relator.
*James A. Haight*, for respondent.

The opinion of the court was delivered by

STILES, J.—The petitioner, who shows himself to be a qualified person, asks that the respondent, who is the commissioner of public lands, be required to receive $182.16 in full payment for certain tide lands, and issue a certificate of purchase to him therefor, in accordance with the provisions of the second proviso of Gen. Stat., § 2172.

The petition shows that in 1884 petitioner took possession of two separate tracts of tide land in Totten's Inlet, Mason county, under the provisions of the territorial law to encourage the cultivation of oysters (Code of 1881, § 1189, *et seq.*), the entire area of the two tracts covering 15.18 acres; that the lands thus taken were not natural oyster beds, nor were there beds of natural oysters thereon, or any oysters at all; that he cleaned and cleared the tracts, prepared them for artificial oyster beds, brought thereon large quantities of seed oysters and so planted, cared for and cultivated them that they have become valuable as a source of oyster supply for the markets; that the tracts are within the third class of tide lands as to location; that on the 20th day of August, 1890, he requested of the state board of equalization and appeal an estimate of the cost of surveying and platting said tracts; that the estimate was made at $60, which amount he paid to the state treasurer, March 17, 1891, with a request for a survey; whereupon the state board directed the local board of tide land appraisers to survey and appraise the tracts, which

was done March 24, 1893, and the appraisement was returned at $12 per acre, July 26, 1893, with a map of the surveys; that the total appraisement was $182.16; that a proper application to purchase the tracts was made by petitioner, and due notice of the same was given by the commissioner by publication, and proof thereof made; that no appeal has been taken from said appraisement; that no contest has been initiated by any person claiming a prior right to any portion of the tracts; that the board of state land commissioners, on the 27th day of February, 1894, certified the absence of any such contests or appeals to the commissioner, and on the same day petitioner tendered to the commissioner the full sum of $182.16, and demanded a certificate of purchase, which was refused; that the Mason county board of appraisers, in March, 1893, examined the said tracts and ascertained and determined that no natural oyster bed covered them or any part thereof, and that they were not necessary for the preservation or growth of any natural oyster bed; that they made no plat of any natural oyster bed in their county which covered any part of said tracts, nor did they mark or note the same upon any plat of tide lands in said county; that no appeal was taken from the determination made by said appraisers by any officer or person, and that no part of said tracts was by any public authority withdrawn or reserved from sale for a natural oyster bed, or at all.

The facts above recited would seem to be sufficient, if true, to establish the right of the petitioner to the relief asked; but there is another matter stated which the respondent maintains should defeat the application.

It appears that in December, 1893, three residents of Thurston county and one resident of Mason county filed with the board of state land commissioners a protest against the application of the petitioner to purchase his two tracts, for the reasons:

1. That said applicant had no right or title to said lands or any part thereof, but was a mere trespasser thereon.

2. That such tide lands were not such lands as were contemplated to be sold under the provisions of the act of March 26, 1890, providing for the sale of tide lands; but were and always had been natural oyster beds, which under the laws of the state were withdrawn and reserved from sale or lease for the purpose of establishing a natural oyster bed reserve.

These protestants demanded that the application to purchase be denied, and the board, after notice to this petitioner, and over his formal objection, took testimony as to the character of the lands, and found and held them to be "covered by natural oyster beds," and to be withdrawn and reserved from sale. The respondent's refusal to accept the tender of the appraised value of the lands, and to issue a certificate of purchase, is based upon this decision of the board.

The point of attack, where the petitioner assails the action of the respondent, is the jurisdiction of the board of state land commissioners to receive and consider the protest and make a decision of the character pronounced, and the consideration of this matter obliges us to review the tide land laws to some extent.

Under the act of March 26, 1890, Gen. Stat., § 2165, any person seems to be at liberty to apply for a survey of tide lands of the third class, under the direction of the state board. When an application to purchase has been filed with the commissioner, he must deliver a copy of it to the state board, and the latter must direct the local board of county appraisers to make an appraisement. This appraisement includes an examination, classification and valuation of each parcel applied for, noting improvements, but excluding them from valuation. A plat and a record of their doings must be made in duplicate, one for

filing in the county auditor's office, and one for return to the state board.    The commissioner must publish a notice of the application to purchase, and, if there are no lawful contests, it may be presumed that in due course of time he will, in some manner, obtain information of the appraisement and make the sale, though the statute leaves it entirely to the imagination to conjecture how he is to be officially informed.    Perhaps now that he is a member of the state board under the act of 1893 (Laws, p. 386), there may be a way to accomplish this evidently necessary step in the proceedings.

The law provides for a "contest" within thirty days after the publication, notice of which must be filed with the state board.    This contest we understand as meaning a proceeding to legally ascertain which of two claimants has the better right to purchase, but as not involving an objection to the sufficiency of the appraisement, or a mere protest of some person without interest.    An appeal from the appraisement is directly provided for in § 2169, but it must be taken through the prosecuting attorney; private persons have nothing to do with the matter.    This appeal is to the state board, and relates to the appraisement alone.    A further appeal in the matter of the appraisement is provided for from the state board to the superior court of the county where the lands are situated.    By some means the authority for this last appeal was detached from § 2169, where it properly belonged, and tacked, as a second proviso, to § 2170.    As this proviso reads, and in the connection where it occurs, it might be supposed to apply to the matter of contests; but it would be ridiculous to suppose that the prosecuting attorney would be required, upon the demand of private persons, or of any person, to interfere in the dispute between two applicants to purchase, where the state had no possible interest, while there would be some propriety in his appealing from the state board to the court

in a matter where the appraisement was claimed to be
too low.

A contest before the state board, to be commenced within
thirty days after the publication by the commissioner, is
provided for in § 2170, and an appeal lies from the de-
cision of the board to the superior court. In this contest
which is to be waged between two rival claimants to the
same land, the rights of the contestants alone are to con-
stitute the issues. Neither the character of the land nor
the correctness of the appraisement is a subject of inquiry
in such proceedings. It is presumed that one or the other
of the contestants will be shown to be entitled to purchase,
unless it might appear that neither is a qualified person.
This theory of the law would, we think, be the natural and
undoubted conclusion were it not for a few words in that
part of the section which provides for an appeal to the
superior court. An appeal is authorized upon "questions
of law, fact, or priority of right to purchase," which means,
simply, upon the merits of the case between the contest-
ants. But the appeal clause concludes with a most em-
barrassing *non sequitur*, thus:

"Which appeal shall bring before the court the question
whether the appraisal represents the actual value of the
land; and the matter shall be submitted to a jury and tried
as other appeal cases are tried, and the jury shall reap-
praise the lands, with right to appeal, as in other cases."

Now, as has been observed, the method pointed out by
the statute for raising the appraisement is by the appeal
of the prosecuting attorney as the representative of the
state; and the method of determining the rights of oppos-
ing claimants is by a contest. No method is provided by
which an applicant can have the appraisement reduced.
Is it to be supposed, then, that, upon an appeal to the su-
perior court, either contestant may propose to raise or
lower the appraisement? Must the state submit to a re-

duction in a proceeding to which it is not a party; and will either contestant be likely to attempt to show that the appraisement which fixes the amount he must pay is not high enough? Suppose the prosecuting attorney had appealed from the appraisement and carried the matter to the superior court, would the same court be called upon to again appraise in a contest appeal? Manifestly such a crossing of purposes could not have been intended, and it must be held that the quoted clauses can have no application to a contest appeal, though they may reasonably have application to an appeal by the prosecuting attorney.

We have gone into this review for the purpose of ascertaining, if possible, the relative positions of the commissioner and the state board under this law, as it stood before the act of 1893 creating the board. The first section of the act of 1890 declared that the tide and shore lands of the state should be disposed of by the commissioner. The same law provided for local appraisers and a board of equalization and appeal, to each of whom certain specific duties were assigned. Strange to say, although the commissioner was the disposing officer, not a single record concerning tide lands was directed to be deposited with him, and no provision was made for communication between him and the board, except that the commissioner must furnish the board a copy of each application to purchase, and where no appeal has been taken from the decision of the board upon a contest, it must certify its findings to the commissioner. Having, under the statute, nothing to do with the disposition of lands, the board was without jurisdiction to interfere with the matter of determining what lands should or should not be sold. The determination of such matters necessarily lay with the commissioner alone, once a survey and appraisement had been made and the record was clear of contests and appeals. The board bore relations to the commissioner

similar to those of a surveyor general to the land officers under the United States land system, except in the two instances of appeals and the matter of appraisements. Nothing was said about supervision, but, necessarily, such supervision as pertained to sales was vested in the commissioner rather than the board.

But it is here urged that the new act creating the board of state land commissioners (Laws 1893, p. 386), has changed all this by certain language therein used. Sec. 5 declares —

"That the said board of state land commissioners shall have full *supervision and control*, under the law, of all . . . tide lands, . . . and the said board shall, from the date of its assumption of official duties, possess and exercise over all such lands and areas all the authority, power and functions, and shall perform all the duties which the . . . state board of equalization and appeal for the appraisement of tide and shore lands had and exercised, and which by law heretofore devolved upon and were the functions which they [it] performed."

This court passed upon this same provision in *State, ex rel. Morse, v. Forrest*, 7 Wash. 54 (33 Pac. 1079), and it was there said:

"Under any known rule of construction of statutes, the conclusion is irresistible that the legislature did not intend to merge the local appraisers into the land commission, or in any manner interfere with their functions or powers."

It was also observed that the act of 1893 makes little or no further reference to tide lands, and that the whole code of law therein enacted, with slight exception, applied only to other lands. That decision would seem to close the controversy as to whether the commissioner is still vested with the same authority and charged with the same duties as were specified in the act of 1890. Whatever of supervision or control over tide lands is not necessary to the commissioner under his authority to "dispose" of

them may be considered as vested in the board, but he must determine what lands are subject to sale, and a protest directed to the board and decided by it is no justification for his refusal to proceed with an application to purchase, since the board had no jurisdiction of the matter involved in the protest.

Another objection made in argument to the relief asked is, that the petition does not show that the county board of appraisers have complied with Gen. Stat., § 2178, requiring them to investigate and plat all natural oyster beds in their county, and that the lands applied for were not within any reservation thus created. This law, which was passed in 1891, seems to be accompanied by the incompleteness which characterized its predecessor of 1890. The local boards are required to proceed at once, upon the taking effect of the act, without the intervention of the state board. They must investigate and determine the location of the natural oyster beds in their counties, and make a plat of the lands covered by, and necessary to the preservation and growth thereof, and the plat is to be "noted" on the tide and shore land plats of the county, and the lands thus platted are specifically reserved from sale and lease. Their decision is to be open for appeal and review, but to whom or by whom is not declared unless the next clause explains. "This *act* shall be open to all appeals and supervisions provided now by law under the act entitled 'An act for the appraising and disposing of the tide and shore lands belonging to the State of Washington'" (the general act of 1890), is the explanatory provision. But the only appeal from the board of appraisers lay with the prosecuting attorney, and the only supervision exercisable by the state board, except through the medium of an appeal, referred alone to technicalities of the plat and the sufficiency of the report accompanying it. The petition avers that these lands have never been in-

cluded in any such plat, although there were duly ap-
pointed appraisers in Mason county, who examined these
particular lands and determined them not to be such lands
as they were required to reserve.    If the contrary is true,
the commissioner can so answer in this proceeding and
thus end it.    It may be that there are tide lands which
the statute was intended to reserve in Mason county, and
that the appraisers have not performed their duty under
the law; but we do not find it required that if there are no
such lands there they shall, nevertheless, make a certificate
of that fact, and that until they have so certified no appli-
cation for the sale of tide lands can be acted upon.    The
act of 1891 did not direct a suspension of sales of tide
lands until the oyster reserves were defined and plats filed,
and we think, after this lapse of time, it ought to be pre-
sumed by the commissioner that if there were such lands
as ought to be reserved in Mason county they would have
been noted on the tide land maps, and that lands not so
noted are subject to sale.

Again, under the law, §2166, the local appraisers, when
they are directed by the state board to make an appraise-
ment, are required to examine, survey and appraise the
lands, classifying the same, noting the improvements
thereon, and by whom claimed.    Their return goes to the
state board, which can require it to be made sufficiently
full and explicit as to the facts so that the commissioner
can determine therefrom whether the sale ought to be
made.    Such an appraisement is alleged to have been
made in this case, and a return thereof filed with the state
board, which, on October 7, 1893, transmitted to the com-
missioner a certificate thereof designating the lands de-
scribed as artificial oyster beds.    Oyster planters are
classed as improvers of tide lands in the act of 1890, and
if it be true that the petitioner, in 1884, cleared off the
tracts he claims, and planted and cultivated oysters thereon

continuously until 1890, when they were of the value and importance which he alleges they were, by reason of his labor, it is difficult to see how he could fail to be entitled to purchase them under the law.    If in 1884 he entered upon tide lands and by his efforts and skill in planting and cultivating oysters there, produced what, upon the passage of the act of 1890, was substantially an artificial bed, although there may have been natural oysters upon the lands before he entered, we think the same reasonable liberality should be extended to him as it is the evident policy of the law to extend to other improvers of tide lands; that is, he should be allowed to have the benefit of his labor and expense at the appraised value of the bare land, it being the intention of the reservation act not to affect such lands, but those only whereon natural oyster beds were to be found at or after its passage.

Possibly, in view of the act of 1891, the determination of the local appraisers could have been reviewed on appeal taken by the prosecuting attorney; and it is also possible that if these lands are, in fact, covered by natural oyster beds, and the determination made by the appraisers was brought about by any fraud on the part of the petitioner, or any mistake of law on the part of the officers of the state, the state will not be estopped, in a proper action, to set aside the commissioner's certificate and annul the sale.    But we are satisfied that, as the proceedings stand, the commissioner should not now hesitate to accept the petitioner's tender and issue the certificate of purchase.

The alternative writ prayed for will therefore issue.

DUNBAR, C. J., and ANDERS and SCOTT, JJ., concur.

HOYT, J. (*dissenting*). — I think that the intent of the legislature to protect natural oyster beds from private appropriation is so manifest that a construction of the statute which will accomplish that end should be adopted by the

courts, if the language will warrant it, and that the language used warrants the construction contended for by the respondent.   Construing all of the provisions in relation thereto together, it seems to me that it was the intent of the legislature that there should be a determination by the local board of appraisers of the facts in regard to the existence or non-existence of natural oyster beds on the tide lands before such lands should be open to purchase by reason of the cultivation of oysters thereon; that this determination should be in one proceeding as to all the tide lands of a county, so that all those who are interested in the preservation of natural oyster beds could take notice thereof, and appeal from the action of the board if they thought it was not such as the facts warranted; that such legislation would not warrant such board of appraisers in leaving this question open until an application was made for some particular piece of the tide lands, and then determine as to that piece alone the facts which they were required to certify under the statute.   It will follow that, in my opinion, the entire proceeding on the part of the petitioner for the acquisition of title to the lands in question was premature, and that the commissioner of public lands for this reason alone properly refused to consummate the sale.

I am also of the opinion that the public interest will be best subserved by holding that in the state board of land commissioners has been reposed final authority as to the tide lands of the state except as their action is specially made the subject of appeal.   And in my opinion it sufficiently appears from the statute that the legislature so intended.   To it is given general supervision of these lands under the law, in addition to the authority theretofore vested in the boards of which it was to be the successor, and to my mind the legislation fully warrants the court in holding that it is made the duty of this board to

supervise the action of all the officers who, under the statute, have anything to do with the care or disposal of tide lands, and excepting as specially provided by statute, to finally determine all questions arising in connection with the administration of the laws in regard thereto. In my opinion the writ should be denied.

### OPINION ON RETURN TO ALTERNATIVE WRIT.

STILES, J.—To the alternative writ issued in this proceeding the respondent files his answer, in which he makes a material affirmative defense, viz.: That petitioner has at no time proved, or tendered proof before him, that he, or some person or corporation under whom he claims, did, prior to March 26, 1890, plant oysters upon ground not covered with a natural oyster bed.

In considering this case upon the petition, the attention of the court was directed almost wholly to the alleged fact that the commissioner was refusing to proceed with petitioner's application on the ground that the board of land commissioners had made a decision which was binding upon him. The fact that there was no showing that any proof had been made before the commissioner himself was not alleged in the petition. Under the act to encourage the cultivation of oysters, passed in 1877 (Code 1881, p. 216), the license granted was for the planting of oysters in any bay or arm of the sea where there were no natural beds of oysters. In the act of 1890, authorizing the purchase of lands covered by artificial oyster beds, the same language was used, and it is clear that, before any person is entitled to receive a certificate of purchase, he must make satisfactory proof to the commissioner of the facts showing his right to purchase. The petitioner in this case seems to have rested upon the idea that his sworn application was sufficient, in the absence of any contest, to authorize proceedings in mandamus against the commissioner, but it is

evident that such a construction should not be followed. Wherever the law requires certain facts to exist as a condition precedent to the right to compel an executive officer to perform a statutory duty, it behooves the person who seeks to compel the officer to act to show that he has, by his own action, put the officer in a position where the ministerial act ought to follow as matter of law.   So, in this case, it was the duty of the petitioner to make proof in such reasonable way as the officer might direct, of such facts as ought to satisfy the officer of the petitioner's right to purchase.   It may be that the course of proceedings taken by the land commission may have misled the petitioner up to this time, but he has lost no rights in the premises, and will lose none, since he can still make his proofs under the regulations made, or to be made, by the commissioner, and if the facts are found by that officer to be as he alleges, the acceptance of his money and the issuance of a certificate of purchase will naturally follow.

The law has entrusted the commissioner with the duty and power of determining the facts in each application presented to him, and directed him, upon the proof of those facts, to proceed in a certain way.   With the determination of the facts the courts will not interfere, but should he make an erroneous application of the law to the facts it will then be time enough for judicial interference.

The petitioner will be allowed ten days from the filing of this decision to reply to the allegation of the respondent that no proofs of the petitioner's right to purchase the lands described have been made to him, and if the reply contains a denial of that allegation, the cause will be further heard upon the issue thus made; but should no reply be filed raising such issue, the writ will be discharged.

HOYT, SCOTT and ANDERS, JJ., concur.

DUNBAR, C. J., dissents.