[No. 1975.   Decided December 21, 1895.]

THE STATE OF WASHINGTON ON THE RELATION OF J. G. MEGLER, *Appellant*, v. W. T. FORREST, *Commissioner of Public Lands, Respondent.*

TIDE LANDS — SALE — CONSTRUCTION OF STATUTES — MANDAMUS TO COMMISSIONER OF PUBLIC LANDS — PLEADING.

The statement, in an affidavit for mandamus to compel the commissioner of public lands to accept an application for the purchase of tide lands, that the relator had presented to the commissioner a duly certified plat of a survey of the land, and the field notes of such survey, is sufficient, so far as the pleading is concerned, and for the purpose of putting respondent upon his denial, to show a substantial compliance with the provisions of the tide land act of 1895, requiring the relator to show that he had made a survey of the lands applied for and that his surveys connected with the United States surveys.

The determination by the commissioner of public lands that the plat of survey presented with an application for the purchase of tide lands is incorrect and indefinite is a matter which cannot be reviewed by the courts.

Under Laws 1895, p. 570, § 106, repealing prior laws upon the subject of tide lands, but preserving all rights which have been acquired thereunder, the rights of applicants for the purchase of tide lands under the act of 1890, whose applications were pending at the time of the passage of the act of 1895, are saved, as such provision cannot be construed as having reference to vested rights.

Laws 1889-90, p. 431, authorize the sale of tide lands of every description, whether there are improvements thereon, or whether there are abutting upland owners.

Appeal from Superior Court, Thurston County.— Hon. T. M. REED, JR., Judge.  Affirmed.

*T. N. Allen,* for appellant.

*James A. Haight,* Assistant Attorney General, for respondent.

The opinion of the court was delivered by

DUNBAR, J.— This action involves the construction of the tide land acts of 1890 and 1895, respectively. On the 30th day of March, 1895, the relator, J. G. Megler, made application to W. T. Forrest, commissioner of public lands of the State of Washington, at his office in Olympia, to purchase a certain tract of land situated in Wahkiakum county, known as "Miller's Sands." On the 6th of April, 1895, Commissioner Forrest notified the relator that his application for the purchase of such land had been rejected, for the reason that the map which the relator had furnished did not comply with the provisions of the law in relation thereto, and his certificate of deposit of $365.29 was returned to him. On the 20th of April following, the relator again made an application to the commissioner for the purchase of the aforesaid lands, and on the 23d the second application was rejected by the commissioner, and the relator was notified of such rejection and that it was for the alleged reason of the insufficiency of the map, the commissioner insisting that the map did not furnish the necessary information as to the portions of the land described that had not been sold. On the 27th day of April, 1895, the relator made affidavit in support of the motion for a writ of mandamus, embracing substantially the facts recited above. To this affidavit the respondent filed a demurrer which was overruled by the court, and an

alternative writ was issued to which respondent filed another demurrer, which demurrer was also overruled; whereupon respondent answered. To this answer appellant demurred, which demurrer was overruled. A reply was filed and the cause went to trial. After hearing of testimony, judgment was rendered denying the peremptory writ and dismissing the case at appellant's cost.

It is urged by the respondent that the demurrer to the affidavit was well taken, for the reason that it nowhere appeared from said affidavit that the survey was connected with, and that the plat showed two or more connections with, the United States surveys of the land. We think this objection is more technical than meritorious, and that when the affidavit stated that the relator had presented to the commissioner a duly certified plat of survey of said lands and the field notes of said survey, the requirements of the law were substantially met, so far as the pleadings were concerned, sufficient, at least, to put the respondent upon his denial of the fact as to whether or not the survey and field notes did show the connections required by the law to be shown. It is evident, however, that the first application of the relator did not comply with the plain provisions of the law, for it nowhere appears that the field notes had accompanied the plat of survey.

Many questions are discussed in this case which, under our view of the main features of the case, it is not necessary to notice. The answer avers that the plat of survey presented to the respondent at the time the relator made his application on the 26th day of April, 1895, was in fact incorrect and indefinite and found to be so by the respondent, and for that reason was rejected by him. This being a question of fact

to be determined by the commissioner, it is not within the province of a court to review it.

In *State, ex rel. Smith, v. Forrest,* 8 Wash. 610 (36 Pac. 686, 1120), it was said:

"The law has entrusted the commissioner with the duty and power of determining the facts in each application presented to him and directed him, upon proof of those facts, to proceed in a certain way. With the determination of the facts the courts will not interfere, but should he make an erroneous application of the law to the facts it will then be time enough for judicial interference."

The answer also shows that —

"A portion of the land embraced in plaintiff's plat was sold by order of the state board of land commissioners on the 4th day of April, 1895, to John Lamont, F. Kennedy and Thomas Craine, and the relator refused to accept the land included in his application not already sold by the state, but insisted on the acceptance of his application as a whole; that pursuant to applications duly made, the commissioner gave notice on the 21st day of February, 1895, that he would, on March 30, 1895, receive sealed bids according to the law for the lands heretofore alleged to have been sold, and cause the same to be published as provided by law; that sealed bids in due form and accompanied by a certificate of deposit or certified check on some bank in this state equal to one-tenth of the amount of the bid, were duly received by the commissioner within said time, and that within five days after said 30th day of March, 1895, said bids were duly opened by defendant as commissioner of public lands, in the presence of the state board of land commissioners, and thereupon said board being satisfied that there was no fraud or collusion by or among the bidders, approved the bids that were considered the highest and best, and caused said confirmation or approval to be certified to the defendant as commissioner of public lands, and that such proceedings were duly

had, that contracts of sale were duly made and executed therefor on the 24th day of April, 1895."

It appears that a new law (Laws 1895, p. 527), providing for the sale of tide lands, was approved on the 26th day March, 1895, and under an emergency clause went into effect immediately. It will be noticed that the commissioners, acting under the provisions of the old law, advertised for bids prior to the passage of the new law, viz., February 21, 1895, giving notice that the sealed bids would be received until March 30, 1895, and at the time the relator had made his application, which we hold to be a good application on its face, viz., the application made April 20th, and in some instances prior to March 26th, the date of the passage of the new act, bids had been furnished by applicants under the provisions of the old law, and before relator's application such bids had been approved by the board of land commissioners. It is contended by the appellant, (1) that the law of 1895 repealed and abrogated all the provisions of the law of 1890, and that the applicants, Lamont, Kennedy and Craine, having applied under the law of 1890, had no standing before the commissioners, or that all the rights they had obtained up to that time were swept away and destroyed by the provisions of the new act; and (2) that there was no provision at all in the law of 1890 for the sale of the character of lands described in relator's application.

We are satisfied that neither of these contentions can be reasonably sustained. The language of the repealing act of the law of 1895 is as follows, (after mentioning the act repealed): " are hereby repealed, except as provided in this act; saving, however, and preserving all rights which have been acquired," etc. We think the right that had been acquired by these

purchasers, who had made their applications under the provisions of the old law and under the direction of the commissioners; who had been to the expense of preparing maps and field notes and furnishing the same, with the deposit that was required by the law, was one of the rights which the new law intended to preserve. The contention that it was only vested rights that the law intended to preserve is not plausible, for the reason that vested rights could not be disturbed in any event, and for the further reason that the legislature, in an abundance of caution, had expressed themselves upon that subject in § 103 of the same act, where they provided that, "this act shall not be construed to affect any vested right in any of the public lands as herein defined of any person, firm or corporation, acquired under existing laws, or any preference right to purchase, but that the same are hereby confirmed, subject only to such rules and regulations for the government of said rights as may be hereafter defined by the board of state land commissioners." So that absolute vested rights and preference rights of purchase, such as are enjoyed by upland owners and improvers, could not have been contemplated in § 106, the repealing section, which provided for the saving and preserving of all rights which had been acquired under the previous laws; and to give any force and effect whatever to this language, we must presume that it was the protection of rights different from those expressly protected in § 103 that was intended.

The second contention, that there was no provision made under the law of 1890 (Laws of 1889-90, p. 431), for the sale of these tide lands, we think is equally without foundation. It seems to be the idea of the appellant that because § 13 provides that, in case the

persons mentioned in §§ 11 and 12, viz., the abutting upland owners and improvers, do not within the time limited, exercise the right to purchase there given, then said lands shall be open to the public for sale as therein provided, this excludes the idea of a provision for the sale of lands where there are no upland owners. We think that would be a strained construction of the law. The first section of the act provides that "the tide and shore lands in the State of Washington shall be appraised, and the same shall be disposed of by the commissioner of public lands." This language is comprehensive and would seem to reach not only two different characters of land, but all the tide and shore lands in the state. Section 4 provides that the tide lands of the State of Washington are divided into three classes; that the first class shall embrace all tide lands situated within or in front of the corporate limits of any city or within two miles thereof upon either side; that the second class shall embrace all tide lands situated at a greater distance than two miles from either side of an incorporated city or town, and upon which are located valuable improvements; and the language of the statute is "the third class shall embrace *all other tide lands.*" If the lands in question are tide lands, (and it is undisputed that they are), then they are without question embraced in the provisions of § 4 of the act of 1890, and provision is made for their sale.

It follows that these lands having been legally applied for by legal purchasers prior to the application of the relator, the writ of mandate asked for was properly denied.

The judgment will therefore be affirmed.

Hoyt, C. J., and Scott, Anders and Gordon, JJ., concur.