[No. 14649. *En Banc.* March 10, 1919.]

DIAMOND DRILL CONTRACTING COMPANY, *Respondent,* v. INTERNATIONAL DIAMOND DRILL CONTRACTING COMPANY *et al., Appellants.*[1]

CORPORATIONS (23)—CORPORATE NAME—RIGHT TO USE—ALLOWANCE BY SECRETARY OF STATE—DISCRETION—REVIEW BY COURTS. Under Rem. Code, § 3680, providing that no corporation shall take the name of a corporation theretofore organized, nor one so nearly resembling such name as to be misleading, and that the secretary of state shall refuse to file articles violating the section, the discretion of the secretary of state in allowing a filing will not be interfered with; but the courts can by injunction prevent the second company from continuing the use of a name in violation of the statute.

SAME (24) — USE OF SIMILAR NAME BY OTHERS — "MISLEADING" NAMES — STATUTES — CONSTRUCTION — EVIDENCE — SUFFICIENCY. The name "International Diamond Drill Contracting Company" is not so similar to "Diamond Drill Contracting Company" as to be misleading, within Rem. Code, § 3680, prohibiting the adoption by corporations of similar or misleading names, in view of the evidence indicating a limited field of activities and a remoteness of the chance of any persons being misled.

TRADE-MARKS AND TRADE-NAMES (6)—RIGHT TO USE NAME—DESCRIPTIVE NAMES—COMMON USE. A corporation has no exclusive right to the name "Diamond Drill Contracting Company" where such name was merely descriptive of the business of diamond drill contractors at the time it adopted the name, and the only evidence that in its use the name had acquired a secondary meaning was the testimony of one witness to the effect that he knew of no other company by that name.

CHADWICK, C. J., and FULLERTON, J., dissent.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered November 27,

[1]Reported in 179 Pac. 120.

1917, upon findings in favor of the plaintiffs, in an action to enjoin the use of a trade-name, after a trial on the merits to the court.   Reversed.

*Guy B. Groff, Wm. Hatch Davis,* and *White & Randall,* for appellants, contended, among other things, that the record does not present a case of infringement of trade-mark. *Eastern Outfitting Co. v. Manheim,* 59 Wash. 428, 110 Pac. 23, 35 L. R. A. (N. S.) 251; *Ball v. Broadway Bazar,* 194 N. Y. 429, 87 N. E. 674; *Koehler v. Sanders,* 122 N. Y. 65, 25 N. E. 235, 9 L. R. A. 576.

Trade-names are protected upon the same principles as trade-marks.   38 Cyc. 764, 765; *Chadron Opera House Co. v. Loomer,* 71 Neb. 785, 99 N. W. 649; *Germer Stove Co. v. Art Stove Co.,* 150 Fed. 141; *Hanover Star Milling Co. v. Allen & Wheeler Co.,* 208 Fed. 513; *Goodyear's India Rubber Glove Mfg. Co. v. Goodyear Rubber Co.,* 128 U. S. 598.

In order that words which are *publici juris* may constitute a trade-name they must have acquired a secondary meaning in trade whereby they are understood as referring solely to the particular goods or business of the complainant.   38 Cyc. 765; Nims, Unfair Competition and Trade-Marks (2d ed.), pp. 70, 219; *Lea v. Deakin,* Fed. Cas. No. 8154; *Anheuser-Busch Brewing Co. v. Fred Miller Brewing Co.,* 87 Fed. 864; *Martell v. St. Francis Hotel Co.,* 51 Wash. 375, 98 Pac. 1116; *Wright Restaurant Co. v. Seattle Restaurant Co.,* 67 Wash. 690, 122 Pac. 348; *Rosenburg v. Fremont Undertaking Co.,* 63 Wash. 52, 114 Pac. 886.

In cases of secondary meaning the injunction should restrain the use of the words only when not accompanied by other words or some clear statement sufficient to distinguish the defendant's goods or business from that of the complainant.   38 Cyc. 905; *Allegretti*

*v. Allegretti Chocolate Cream Co.,* 117 Ill. 129, 52 N. E. 487; *Ludlow Valve Mfg. Co. v. Pittsburgh Mfg. Co.,* 166 Fed. 26; *Dr. A. Reed Cushion Shoe Co. v. Frew,* 162 Fed. 887; *Singer Mfg. Co. v. June Mfg. Co.,* 163 U. S. 169.

The use of the name International Diamond Drill Contracting Company does not constitute unfair competition. 38 Cyc. 756, 759, 800; *Pacific Coast Condensed Milk Co. v. Frye & Co.,* 85 Wash. 133, 147 Pac. 865; *Elgin National Watch Co. v. Illinois Watch Case Co.,* 179 U. S. 665; *Howe Scale Co. v. Wyckoff, Seamans & Benedict,* 198 U. S. 118; *Hygeia Distilled Water Co. v. Hygeia Ice Co.,* 72 Conn. 646, 45 Atl. 957, 48 L. R. A. 147; *Bolander v. Peterson,* 136 Ill. 215, 26 N. E. 603, 11 L. R. A. 350; *Elgin Butter Co. v. Elgin Creamery Co.,* 155 Ill. 127, 40 N. E. 616.

The use of a name merely descriptive of the business is not unfair competition. Words merely descriptive cannot be appropriated as against others who can and do use them with equal truth. 38 Cyc. 822; 7 Am. & Eng. Ency. Law (2d ed.), 690; *Columbia Mill Co. v. Alcorn,* 150 U. S. 460; *Industrial Mutual Deposit Co. v. Central Mutual Deposit Co.,* 112 Ky. 937, 66 S. W. 1032; *Michigan Savings Bank v. Dime Savings Bank,* 162 Mich. 297, 127 N. W. 364, 139 Am. St. 558.

Actions to restrain unfair competition are founded upon fraud, which must be proven, and the burden is upon the complainant. *Day v. Webster,* 23 App. Div. 601, 49 N. Y. Supp. 314; *McLean v. Fleming,* 96 U. S. 245; *Lawrence Mfg. Co. v. Tennessee Mfg. Co.,* 138 U. S. 537; *Miskell v. Prokop,* 58 Neb. 628, 79 N. W. 552; *American Wine Co. v. Kohlman,* 158 Fed. 830; *Celluloid Mfg. Co. v. Cellonite Mfg. Co.,* 32 Fed. 94; *Continental Ins. Co. v. Continental Fire Ass'n,* 96 Fed. 846; *Employers Liability Ins. Co. v. Employers Liability Assurance Co.,* 16 N. Y. Supp. 397.

The measure of a case of unfair competition is "deception," not "confusion." *Hygeia Water Ice Co. v. New York Hygeia Ice Co.,* 140 N. Y. 94, 35 N. E. 417; *Lapointe Mach. Tool Co. v. J. N. Lapointe Co.,* 115 Me. 472, 99 Atl. 348; *Kaufman v. Kaufman,* 223 Mass. 104, 111 N. E. 691.

*Voorhees & Canfield* and *P. M. Troy,* for respondent, contended, *inter alia,* that equity has jurisdiction to protect the rights of the respondent under the statute. *Grand Lodge of A. O. U. W. v. Graham,* 96 Iowa 592, 65 N. W. 837, 31 L. R. A. 133; *American Clay Mfg. Co. v. American Clay Mfg. Co. of New Jersey,* 198 Pa. 189, 47 Atl. 936; *Society of the War of 1812 v. Society of the War of 1812, etc.,* 46 App. Div. 568, 62 N. Y. Supp. 355; *Glucose Sugar Refining Co. v. American Glucose Sugar Refining Co.* (N. J.), 56 Atl. 861; *Edison Storage Battery Co. v. Edison Automobile Co. of Washington, D. C.,* 67 N. J. Eq. 44, 56 Atl. 861; *San Francisco Oyster House v. Mihich,* 75 Wash. 274, 134 Pac. 921; *L. Martin Co. v. L. Martin & Wilckes Co.,* 75 N. J. Eq. 39, 71 Atl. 409; *Benevolent & Protective Order of Elks v. Improved Benevolent & Protective Order of Elks of the World,* 58 Misc. Rep. 624, 111 N. Y. Supp. 1067.

The respondent has the right, irrespective of statute, to the exclusive use of the name as a trade-name. *Groceteria Stores Co. v. Tibbett,* 94 Wash. 99, 162 Pac. 54, L. R. A. 1917C 955; *Nesne v. Sundet,* 93 Minn. 299, 101 N. W. 490, 106 Am. St. 439; *Martell v. St. Francis Hotel Co.,* 51 Wash. 375, 98 Pac. 1116; *Eastern Outfitting Co. v. Manheim,* 59 Wash. 428, 110 Pac. 23, 35 L. R. A. (N. S.) 251; *Rosenburg v. Freemont Undertaking Co.,* 63 Wash. 52, 114 Pac. 886; *Wright Restaurant Co. v. Seattle Restaurant Co.,* 67 Wash. 690, 122 Pac. 348; *State ex rel. Collins v. Howell,* 80 Wash.

649, 142 Pac. 1157; *Northwestern Knitting Co. v. Garon,* 112 Minn. 321, 128 N. W. 288; *Lamb Knit-Goods Co. v. Lamb Glove & Mitten Co.,* 120 Mich. 159, 78 N. W. 1072, 44 L. R. A. 841; *Sartor v. Schaden,* 125 Iowa 696, 101 N. W. 511; *Dyment v. Lewis,* 144 Iowa 509, 123 N. W. 244, 26 L. R. A. (N. S.) 73; *Armington v. Palmer,* 21 R. I. 109, 42 Atl. 308, 43 L. R. A. 95; *International Silver Co. v. William H. Rogers Corp.,* 66 N. J. Eq. 119, 60 Atl. 187, 2 Am. & Eng. Ann. Cas. 407; *Bissell Chilled Plow Works v. T. M. Bissell Plow Co.,* 121 Fed. 367; *Dennison Mfg. Co. v. Thomas Mfg. Co.,* 94 Fed. 651.

Where a name has acquired a secondary meaning and come to indicate the source of particular articles, the mere use of such a name by another, unaccompanied by adequate distinguishing statements, in itself amounts to an artifice calculated and intended to deceive, and constitutes unfair competition. 38 Cyc. 789; *Giragosian v. Chutjian,* 194 Mass. 504, 80 N. E. 647, 120 Am. St. 570; *Cohen v. Nagle,* 190 Mass. 4, 76 N. E. 276, 2 L. R. A. (N. S.) 964; *Flagg Mfg. Co. v. Holway,* 178 Mass. 83, 59 N. E. 667; *Gordon Hollow Blast Grate Co. v. Gordon,* 142 Mich. 488, 105 N. W. 1118; *Viano v. Baccigalupo,* 183 Mass. 160, 67 N. E. 641; *Singer Mfg. Co. v. June Mfg. Co.,* 163 U. S. 169; *Wyckoff, Seamans & Benedict v. Howe Scale Co.,* 122 Fed. 348; *American Tobacco Co. v. Polacsek,* 170 Fed. 117; *G. & C. Merriam Co. v. Saalfield,* 198 Fed. 369; *Herring-Hall-Marvin Safe Co. v. Hall's Safe Co.,* 208 U. S. 554; *Lee v. Haley,* L. R. 5 Ch. App. Cas. 155; *Philadelphia Trust, Safe Deposit & Ins. Co. v. Philadelphia Trust Co.,* 123 Fed. 534; *Reddaway v. Banham & Co.,* (1896) A. C. 199, 210, 222, 74 L. T. Rep. (N. S.) 289.

·MACKINTOSH, J.—The respondent was incorporated under the laws of the state of Washington in the year

1900, the incorporators being Knight and Stone, who organized their company under the name of "Diamond Drill Contracting Company". The appellant was incorporated under the laws of this state in 1913, the incorporators being one Mitchell, his wife, and son, the name under which they incorporated being "International Diamond Drill Contracting Company". The respondent commenced this action to permanently enjoin the appellant from the use of the latter name, or any name containing the words "Diamond Drill" or "Diamond Drill Contracting Company".

For many years prior to 1900, the tool known as the diamond drill had been in use throughout the world, the feature which distinguishes the diamond drill from other drills being the use of a cutting surface set with carbon diamonds, the drill being used to secure a core of the rock in the line of the drill hole, this core being brought to the surface through the drill for examination. Prior to 1900, Knight and Stone had been employed by the Sullivan Machinery Company, which was engaged in the manufacture and sale of mining supplies, among them the diamond drill, and, incidentally, was contracting to drill with diamond drills for different individuals or companies desiring to have their properties prospected. Knight and Stone, leaving the employ of the Sullivan Machinery Company, engaged as partners in the business of drilling by contract with diamond drills for owners of property desiring to have mineral prospecting done by means of drilling. They then incorporated the respondent, ninety-five per cent of the activity of which is contracting business, the other five per cent consisting of the manufacture and sale of diamond drills. Since 1904 these drills had been known

as the "double tube return water core barrel drills", patent for which was issued to Knight and Stone.

The respondent in its business had acquired a reputation for ability and reliability and had paid out large sums of money in advertising its business under the name of "Diamond Drill Contracting Company", and had become well known in the diamond drill contracting business by the name of "Diamond Drill Contracting Company". Mitchell for some years had peen a diamond driller in the employ of the Sullivan Machinery Company and, after leaving that company, had been employed by the respondent for a few months in the year 1911 as a drill foreman. After he had organized the appellant company, it engaged, in Spokane, within a very few blocks of the main office of the respondent, in the diamond drill contracting business. It, also, as a minor portion of its business, engaged in the manufacture and sale of diamond drills of a design similar to that manufactured by the respondent, but made under what is known as the Jenkins' patent. The appellant for sometime conducted its operations with drills manufactured by the respondent and purchased from it; but a few months before the beginning of this action, the appellant began to engage in the manufacture and sale of machines on its own account under the Jenkins' patent.

At the time of the trial, there were in the United States and Canada some half dozen or more firms or corporations which were taking contracts to drill with diamond drills; but only one or two of these companies, other than the two involved in this litigation, included in their names the words "Diamond Drill Contracting Company," one company so doing being the Smith & Travers Diamond Drill Contracting Com-

pany, of Canada. Respondent predicates its right to enjoin the use of the words "Diamond Drill Contracting Company", first, upon section 3680, Rem. Code; and, second, upon the fact which it alleges that the name "Diamond Drill Contracting Company" had acquired a secondary meaning, and respondent had therefore a right to its exclusive use as a trade-name, and should be protected from the use of a similar and misleading name by the appellant.

Section 3680, Rem. Code, reads, so far as material to this controversy, as follows:

"No corporation shall take the name of a corporation theretofore organized under the laws of this state, nor . . . one so nearly resembling the name of such other corporation as to be misleading. The secretary of state shall refuse to file said articles of incorporation of any association or corporation violating the provisions of this section."

The secretary of state, having accepted the filing of the articles of appellant, has exercised his discretion and determined that the two names are not misleading. The appellant argues therefrom that the respondent is bound by that determination, and in this action cannot collaterally attack the action of the secretary of state, and that such action can only be reviewed in a direct proceeding, and then only for mistake, abuse, or want of jurisdiction; and if there was ground for an honest difference of opinion, the secretary of state, having exercised his judgment, that exercise cannot be here reviewed. *State ex rel. Megler v. Forrest*, 13 Wash. 268, 43 Pac. 51.

It is probably true that the action of the secretary of state in allowing the filing of the appellant's articles cannot be brought into question in this proceeding; and, in a direct action against the secretary of state for the purpose of securing the cancellation

of such filing, the court would not interfere with the exercise of his discretion; for, as we said in *State ex rel. Progressive Motion Picture Co. v. Howell,* 96 Wash. 163, 164 Pac. 917:

"It may also be true that had the names of these corporations, instead of being exactly alike, only resembled each other with a difference such as to furnish room for an honest difference of opinion as to whether they so resembled each other 'as to be misleading,' thus presenting a question for the exercise of judgment on the part of the secretary for decision, we would not award relator relief by mandamus."

But this view of the action of the secretary of state does not exclude the consideration of the other phase of § 3680, which provides that no corporation shall take the name of a corporation theretofore existing, nor a name so closely resembling the name of such other corporation as to be misleading. In other words, the section provides that no corporation shall take a misleading name, and that the secretary of state shall not allow the filing of the articles of incorporation of such company. As we have said, we cannot, in this action, interfere with the filing which has already taken place; but if the second company has taken the name of a corporation theretofore existing or taken a name which is so similar thereto as to be misleading, we can prevent, in this action, the second company from continuing to use such name. *Grand Lodge A. O. U. W. v. Graham,* 96 Iowa 592, 65 N. W. 837, 31 L. R. A. 133; *Society of the War of 1812 v. Society of the War of 1812, etc.,* 46 App. Div. 568, 62 N. Y. Supp. 355; *Edison Storage Battery Co. v. Edison Automobile Co. etc.,* 67 N. J. Eq. 44, 56 Atl. 861.

This presents to us a question of fact as to whether the prefixing of the word "International" to the name theretofore used by the respondent is the adoption

by the respondent of a name "so clearly resembling the name of" the respondent "as to be misleading". It may be that the use of these two names would result in some confusion. The testimony disclosed by the record on the question of the confusion that arose by reason of the similarity of names of the two companies is embraced in these incidents: The officers of the respondent testify that the appellant, so far as they know, has never obtained any business that was intended for respondent, and that the appellant made no effort to represent itself as the respondent, nor did it make any fraudulent representations to secure contracts; they further testify that, at numerous times, telegrams addressed to Mitchell were delivered to respondent and that a great many local and long distance calls, telegrams, invoices and express packages intended for appellant had been delivered at respondent's office.

The employees of the appellant testified that, from the time of appellant's organization until the time of trial, two letters, one telegram, but no telephone calls, had been received at the office of appellant which were intended for the respondent; that the attention of the mail carrier having been called to the mis-delivery of these letters, no trouble of that character thereafter occurred. There was no evidence produced showing that there had been any loss of business to the respondent by reason of this confusion which has been shown, nor has the appellant obtained any information concerning the respondent's business, nor has the appellant taken advantage of the confusion, such as it was, to benefit thereby.

But confusion is not what is inhibited by the statute; "misleading" is the term, and that means, calculated to lead astray or lead into error, and must

refer not to casual mistakes, as to identity, but to the leading into error of persons contemplating or engaged in transactions with the respondent. In determining whether names are misleading by reason of similarity, attention must be paid in each case to the nature and extent of the business being conducted. It may be that names used in certain places or lines of business, or among certain classes of people, would be greatly misleading; while, if used in other places, or lines or among other people, there could be no one misled.

The testimony here shows that the drill contracting business is confined to a very narrow field; the general public never is a customer. The activities of these companies is confined nearly exclusively to operating for mining men and concerns, and among such customers it is generally known who are available in the drilling field, and the corporate name does not mean as much as the reputation of the individual who does the actual drilling. No commodity or service is being offered to a large class of prospective customers by the respondent and appellant, but a very small group ever is in the market for this service, and this group is engaged in such business and is composed of such persons that the chance of any of them being misled by such similarity as exists in the two names here involved is remote indeed. The evidence does not disclose that there has been any such misleading, and we cannot say, as a matter of fact, that the evidence satisfies us that the names are so similar as to be misleading. *Pacific Coast Condensed Milk Co. v. Frye & Co.*, 85 Wash. 133, 147 Pac. 865. The statute does not confine its protection of the name of a corporation first adopting it to any particular or special class of name, and the protection afforded is more

comprehensive than that given under the law of trade-name or trade-mark, and protects even those using purely descriptive titles without secondary meaning, but this protection is always against the use of a name "so clearly resembling" the prior name "as to be misleading".

Section 9492, Rem. Code, prohibiting the counterfeiting or taking of similar trade-marks is analogous to § 3680; and under it we have held that any character of words may be trade-marked independently of the restrictions of the general trade-mark law.

"Respondent's second assertion is based on the ground that the word 'groceteria' is descriptive of the grocery business, and therefore is not such a word as could become the subject of a trade-mark. It would seem that the statute above quoted would be controlling here and answer this argument contrary to respondent's contention." *Groceteria Stores Co. v. Tibbett,* 94 Wash. 99, 162 Pac. 54, L. R. A. 1917C 955.

Respondent says that it embarked upon what was virtually a new course of business when it entered into the diamond drill contracting business; that, prior to that time, although there had been contracting done, it had only been done as the incidental and minor operations of concerns primarily engaged in the manufacture and sale of drills; that, having thus entered into such business, it, in reality, created a new business, and therefore was privileged to take and hold a word descriptive of that business as its corporate name; and that, through the creation and development of its business, those words have now become possessed of a secondary meaning; that they now constitute a trade-name of the corporation, and that the name has acquired among mining men and the public generally a meaning different from the obvious meaning of the words, and that it now signifies

the respondent company itself. The testimony of Knight, one of the two incorporators of respondent, discloses the following:

"Q. Were you and Mr. Stone partners in the diamond drill contracting business? A. Well, yes, we came out here as agents and partners of the Sullivan Machinery Company. Q. Then afterwards you quit the Sullivan Machinery Company and went in business for yourselves? A. We did. Q. As partners, Knight & Stone? A. Knight & Stone, yes. Q. You continued in that relation until you incorporated in 1900? A. Yes, a couple of years. Q. During the time that you were partners, Mr. Knight, you were representing the Sullivan Machinery Company, and after that you were diamond drill contractors, weren't you? A. Yes. Q. Mr. Knight, the words 'diamond drill' is a description of the drill that was exhibited there in your office this morning? A. Yes. Q. That is known as a diamond drill, isn't it? A. That is known as a diamond drill, yes. Q. And the reason of that is because diamonds are used instead of steel for cutting the rock? A. I suppose that is the reason they call them diamond drills. Q. It is generally known and has been known for a long time? A. Yes, it is. Q. Where did that name originate? A. I think it was really originated in France. I think that is where the first diamond drill was made that I can find out. Q. How long ago? A. O, I cannot tell. Q. A couple of hundred years ago? A. No, about forty years ago, something like that. Q. Who were the first companies to use that in this country? A. Well, I don't know. The Sullivan Machinery Company of Claremont, New Hampshire was the first and the Toole Manufacturing Company of Chicago. Q. And the Toole Manufacturing Company was absorbed by the Sullivan Machinery Company, and it is now one and the same thing, isn't it? A. Yes, it is now one and the same thing. Q. Were you in the employ of the Sullivan Machinery Company at that time? A. No. Q. When did you go into the employ of the Sullivan Machinery Company? A. In

1886. Q. Were they using the name diamond drill then in designating their diamond drills? A. They called themselves the Sullivan Machinery Company. Q. I understand. They designated this particular machine as a diamond drill, didn't they? A. They advertised that they were manufacturing and selling diamond drills, yes, sir, certainly. Q. When you were with the Sullivan Machinery Company any person or association of persons that were doing a contracting business and using one of these machines were called diamond drill contractors, weren't they? A. Yes, they have been called diamond drill contractors. Q. And they have been called that all over the world? A. All over the world, yes. Q. And that name did not originate with you? A. The Diamond Drill Contracting Company did. Q. I say the words diamond drill or diamond drill contractors did not originate with you? A. No, it did not originate with us. Q. How would you term a firm or association of people that were using diamond drills and doing a diamond drill contracting business? A. I would call myself diamond drill contractors for prospecting mineral lands with a diamond drill. Q. Why didn't you select your name as a corporate name? A. We thought that was a pretty good name. Q. Why did you select the name Diamond Drill Contracting Company? A. It was a euphonious, harmonious name. Q. Now, Mr. Knight, when you selected that name it was a name that was known generally by diamond drill salesmen, by diamond drill employes, and by people who contemplated having diamond drilling as a name given to designate a certain kind of business, didn't you? A. Well, the fact of the matter is—— Mr. Voorhees: Wait a minute. Q. I will ask it again. You knew, Mr. Knight, when you selected that name, that it was a name designating a given line of business, didn't you? Just answer that question, yes or no? A. No, I don't know as I did. Q. You don't know that it did? A. No. Q. Didn't you just testify a while ago that the machine was known as a diamond drill? A. Yes. Q. Didn't you testify a while ago that ever since you had known anything about the business that

men who collected themselves together were known as diamond drill contractors? A. Yes, sir. Q. And didn't you testify a while ago that any association of men were known as the diamond drill contracting company? A. These fellows were all—— . . . Q. Didn't you testify a while ago that when an association of men got together and went into this business they were known as diamond drill contractors? Just look at me. . . . A. Not entirely . . . They are not all called diamond drill contractors. Some are called exploration companies, and some call themselves diamond drill contractors, and some contractors for prospecting mineral lands with a diamond drill, and all the way down the line you can form one hundred combinations with those words. Q. But they are most generally known, Mr. Knight, as diamond drill contractors? A. I suppose you might say they are generally known as diamond drill contractors. Q. Now, Mr. Knight, isn't it a fact that when you took that name you did not take it for its beautiful sound, but you took it because it is simple and generally designated the business you were engaged in? A. It certainly does designate the business we were in. When we took that name there were very few diamond drill contractors in this country. That was in the early days, and there was very little known about diamond drilling at that time, and all of these other fellows have come in since that time. Q. All of them? A. Every one."

While individuals or corporations may do business under names which consist merely of descriptive words, or generic or geographical words, or words in common use, or words out of their common use, or may create new words or new combinations of letters which cannot be properly designated as accepted words; yet, an individual or corporation taking as a business name words which are merely descriptive of the business in which he or it is engaged will not be protected in the exclusive use of that name,

unless, being the first in the field, he or it can be said to have originated that line of business and applied a name to such business, and that the words which were merely descriptive of the business may have thus acquired a secondary meaning, and have, by reason of the originality of their application to a new line of endeavor, come to stand for the individual or corporation first using them.

We are not here concerned with the question of the infringement of a trade-mark nor with the question of a trade-name as applied to a class of commodities, but this case only presents the question of a trade-name as it relates to a business. *Northwestern Knitting Co. v. Garon,* 112 Minn. 321, 128 N. W. 288. The respondent, while it contends that it was the first one to engage as a company in the diamond drilling contracting business, does not claim that, by reason thereof, it occupied any exclusive field. It concedes, as it must, that any one possessed of a diamond drill and the desire to contract for service therewith may do so, but merely contends that it is entitled to the exclusive use of the name "Diamond Drill Contracting Company". It must be conceded that a corporation cannot adopt words purely descriptive of an already existing business and thus acquire an exclusive right to their use. *Elgin Butter Co. v Elgin Creamery Co.,* 155 Ill. 127, 40 N. E. 616; *Industrial Mutual Deposit Co. v. Central Mutual Deposit Co.,* 112 Ky. 937, 66 S. W. 1032.

In its final analysis, then, this point in the case is resolved into the determination of a question of fact. If the respondent, when it organized, can be said to have been the discoverer, promoter, and pioneer in a new business, it might then have given to that business a name which it could exclusively enjoy as

against all others who might subsequently engage in that line of business. But if, on the other hand, at the time of its organization, the business of drilling with diamond drills was known and being carried on by individuals or by corporations, the respondent could not then, by merely first combining the words into the name, acquire exclusive ownership of that name.. The first corporation which engaged in the dry goods business might have had the right to the use of the words "Dry Goods Company"; but, if the dry goods business had been known and carried on for sometime, a company could not then be organized and take the name of the "Dry Goods Company" and exclude from the use of those words any other company engaged in the same business which desired to use those words in combination with any others which it might see fit to adopt. The respondent admits that, at the time of its organization, the diamond drill manufacturing business was being conducted incidentally by some machinery companies, and that the diamond drill contracting business was being conducted by certain individual contractors; but it says that, so far as the companies were concerned which were engaged in the business, they were only so engaged incidentally to the manufacture and sale of mining machinery; and that so far as the individual contractors were concerned, they were engaged in the business in a small way, and not as companies, and that the respondent is the first *company* to engage in the business as its principal and primary object.

This evidence is not such as to establish the status of the respondent as the originator of the business, and cannot entitle it to the exclusive use of the words which it has adopted as its name. The fact that there were diamond drill contractors at the time respondent

commenced as a diamond drill contracting company puts it out of the class of originators, and puts it into the class of imitators. More than this, the evidence is not compelling that the words have, in their use by the respondent, acquired a secondary meaning. While the words are descriptive and in common use, they yet may be combined into a trade-name, and that trade-name will be protected. when it has acquired a meaning identifying the particular corporation using it and its business. 38 Cyc. 765; Nims, Unfair Competition and Trade-Marks (2d ed.), 70. Or, differently stated, words *publici juris* are not protected from use in their primary sense but only in their secondary sense. The evidence does not show that the words "Diamond Drill Contracting Company" have ceased to have their usual meaning as indicating a company engaged in the business of contracting to drill with diamond drills, and have now the meaning and are generally understood by the public as referring only to the respondent. The only evidence tending to show this was the evidence of one witness for the respondent, who testified that he knew of no other company by the name of "Diamond Drill Contracting Company", and that to his mind that name meant the respondent. This evidence is not sufficient. The public interested must have been shown to have understood these words to have acquired a new meaning. The evidence only went to the extent of showing that the respondent had become favorably and extensively known and enjoyed a good reputation for integrity and ability. There is no question of fraud in any representations made by the appellant. As we have seen, there is no representation made by the appellant that its business was the business of respondent. The name it was using was being used without decep-

tion, and the words, of that name, in so far as they were identical with respondent's name, were merely descriptive of the business in which they were both engaged. *Pacific Coast Condensed Milk Co. v. Frye & Co.*, 85 Wash. 133, 147 Pac. 865. The appellant had a right to use words which were descriptive of the business in which it was mutually engaged with the respondent, those words·being ones which the public still used to indicate the business followed by both of them.

Those cases in which we have heretofore protected a trade-name from unfair competition are cases in which, to the words descriptive of the business, has been added some fanciful word, or a word of personal or geographical significance, and partaking of the nature of a fanciful name, the entire name thus becoming something more than a mere description of the business in which the company using it was engaged. In these cases, the originality of such combination has been protected. These cases are distinguished from the case at bar by the fact that here the respondent has added nothing to words merely descriptive of its business. *Eastern Outfitting Co. v. Manheim*, 59 Wash. 428, 110 Pac. 23, 35 L. R. A. (N. S.) 251; *Rosenburg v. Fremont Undertaking Co.*, 63 Wash. 52, 114 Pac. 886; *State ex rel. Collins v. Howell*, 80 Wash. 649, 142 Pac. 1157; *Martell v. St. Francis Hotel Co.*, 51 Wash. 375, 98 Pac. 1116; *Wright Restaurant Co. v. Seattle Restaurant Co.*, 67 Wash. 690, 122 Pac. 348; *San Francisco Oyster House v. Mihich*, 75 Wash. 274, 134 Pac. 921; *New York Life Insurance Co. v. Orpheum Theater & Realty Co.*, 100 Wash. 573, 171 Pac. 534.

A case illustrative of the use of words not descriptive of the business at all but purely fanciful or orig-

inal is *Groceteria Stores Co. v. Tibbett,* 94 Wash. 99, 162 Pac. 54, L. R. A. 1917C 955, which case presents a similarity to the instant case in that it dealt with the establishment of a new business or a new form of an old business, but to describe the new industry a new word was coined. Of course, the cases are dissimilar in that the *Groceteria Stores* case arose under the trade-mark statute.

The decree of the lower court is cancelled and the action dismissed.

.TOLMAN, MOUNT, MITCHELL, MAIN, PARKER, and HOLCOMB, JJ., concur.

CHADWICK, C. J., and FULLERTON, J. (dissenting)— We dissent. A corporation cannot adopt words purely descriptive of an already existing business, and thus acquire an exclusive right to their use. *Elgin Butter Co. v. Elgin Creamery Co.,* 155 Ill. 127, 40 N. E. 616; *Industrial Mutual Deposit Co. v. Central Mutual Deposit Co.,* 112 Ky. 937, 66 S. W. 1032. The diamond drill was being used when the respondent was incorporated, but the diamond drill contracting business did not exist as a well recognized form of contracting business. As far as it existed, it was purely incidental to the manufacture and sale of diamond drills by one or two corporations whose names did not indicate that they were engaged in the diamond drill contracting business. It, then, is true that the respondent, through its advertising, its efforts, and its conduct of its business, has developed a contracting business for the drilling by diamond drills where no such business had theretofore existed on any such scale. It is true that the name under which it operated is composed of words which are merely descriptive of the business in which it is engaged, that it invented no new name, created no combination of let-

ters into a hitherto unknown word with which to describe this new business in which it embarked; yet, through its years of operation, it established in these four words which, when originally combined, were descriptive of the business, a secondary meaning, so that persons interested in securing the services of contractors to drill with diamond drills, when they saw the words "Diamond Drill Contracting Company," knew that the respondent was thereby intended, and that those words stood for and represented the respondent and its business. 38 Cyc. 765; Nims, Unfair Competition and Trade-Marks (2d ed.), p. 70.

These words were, as we have indicated, merely descriptive or generic words, and probably could not have been protected under the trade-mark law, but are entitled to protection, if, through their use, they had acquired a secondary meaning. In other words, these descriptive words have become cemented into a trade-name, and have solidified into a definite and determined combination the name of the respondent, which identifies the respondent and its business and the use of which name will be protected.

It is to be remembered that we have not here under consideration a trade-mark infringement. *Northwestern Knitting Co. v. Garon*, 112 Minn. 321, 128 N. W. 288. We must concede that the respondent has no right, and it is claiming none, to the exclusive possession of the field of diamond drill contracting. That field is open to whoever has a diamond drill and the desire to contract for its operation; but the respondent is entitled to use exclusively those words which it assembled and used to designate a new business which it had placed in the field of operation. The respondent has taken and opened a new field of industry and given to it a name, which name in its use has become

of value, and now constitutes one of its principal assets, and although that field may be tilled by others, they cannot do so under the name which has become a designation of respondent, though at first it described a business. By adding the word "International" to respondent's name, the appellant does not so obliterate the secondary meaning that is attached to those words as to protect the respondent's right in that name.

The appellant contends that, in any event, the respondent has shown no such injury by the appropriation of its name as to entitle it to the relief sought. It may be that the evidence does not disclose that there has been a great deal of confusion in the affairs of respondent by reason of the appellant's use of the name; but it is not necessary that there should be such a showing in order for respondent to maintain its right to its trade-name. It is sufficient to show that probable injury would result if it is shown that actual interference has taken place, that is sufficient injury to entitle it to an injunction.

The argument of appellant that this case presents no question of a trade-name is stated as follows:

"When the respondent adopted the descriptive words they were not descriptive of the respondent's business alone, for others were in the same business and remain so to this day. The doctrine of secondary meaning does not apply to a name under which an individual or association does business where the words composing the name are merely descriptive of the business. 'The entire doctrine of trade names presupposes that the public have no need to use the word in referring to the article to which it is applied. Thus the public has need of the word 'Ivory' to describe elephants' tusks; it has no need of the word 'Ivory' to describe soap.' Nims on Unfair Competition, 67 Second Edition. So the name which through use may ac-

quire a secondary meaning, while it may be a word in common use and *publici juris* as a part of the English language, must not be a word necessarily descriptive of the article or business to which it is applied. As suggested by Mr. Nims no one could acquire the exclusive right to the word ivory as applied to elephants' tusks, because necessarily descriptive, yet the right to use the same word in connection with soap may be acquired because the word was not, until used by the makers of Ivory Soap, in any way descriptive of soap. There can be no secondary meaning of a word until that word has been so used in connection with an article or business that in the understanding of the public the word no longer has its usual significance but is understood to mean the goods or business of the complainant. Its use then becomes a representation that the article or business with which it is connected is the article or business of the complainant.''

Throughout the appellant's brief, it recurs to the fact that, when the respondent adopted the descriptive words, they were not descriptive of the respondent's business alone for the reason that there were others in the same business. This is best exemplified by the concluding paragraph of appellant's reply brief:

''That the incorporation of respondent under the name assumed by it did not determine its right to the exclusive use of that name; that right depended, not upon the secretary having granted it a charter under that name, but upon whether the words or combination of words composing its name were such that it could lawfully appropriate them to its exclusive use, as having invented or coined them, or being the first to use them. That it may have been the first corporation to make use of them in a corporate name gives no exclusive right. If they were in common use, they had become free to all.''

With these contentions, we must agree as a matter of law; but, as we have already shown, the respondent was not only the first to use the name, but was the

first to actually engage in the diamond drill contracting business as a business. Although the case of *Groceteria Stores Co. v. Tibbett,* 94 Wash. 99, 162 Pac. 54, L. R. A. 1917C 955, arose under the trademark statute, it presents a similarity to the instant case, in that it dealt with the establishment of a new business, or a new form of an old business, but to describe that new business a new and fictitious word was coined.

The offense of the appellant does not lie in the use of the common words employed to describe its business, but in the adoption of a combination of words which will tend to the confusion of respondent's business. A complete answer to the argument of the majority is to be found in the statute. There is no room for construction. The question is not whether, in the opinion of the judges, the names may be similar or dissimilar, but whether the name adopted so nearly resembles ''the name of such other corporation as to be misleading.'' This result is evident to the mind and is confirmed by the proof. If the statute will not protect a business unless it has coined some new word as descriptive of its business, or as a name to designate and distinguish it as a corporation, it is a vain and useless thing. Respondent, having virtually created a business which did not exist before, is entitled to the use of the particular name which it applied to that business to the exclusion of other corporations who have the right to engage in the same business, but not under the name containing the words ''Diamond Drill Contracting Company.''