FEDERAL ENGINEERING CO., INC., *v.* GRIEVES.

1. TRADE-MARKS AND TRADE-NAMES—FEDERAL—TOOL AND DIE BUSINESS.

The word "Federal" has no inherent quality which necessarily connects it with the tool and die business conducted in the same county by plaintiff corporation and partnership and by defendant partnership, where there are at least 60 enterprises using the term in their name and the United States government has a "Federal Building."

2. SAME—SIMILARITY OF NAMES CONSIDERED AS AN ENTIRETY.

Considering as an entirety the names used by parties engaged in the business of tool and die manufacturing, there is no legally objectionable similarity between the names "Federal Engineering Company" and "Federal Tool & Die Company."

3. Same—Unfair Competition.

Each case in which the question of unfair competition is presented through use of similar trade names must be determined on its own facts.

4. Same—Injunction—Confusion of Names.

The confusion of which the court takes cognizance when asked to enjoin a partnership, engaged in same line of business in same county as plaintiff corporation and partnership, from using similar name for its firm must be something more than that resulting from carelessness or ignorance on the part of the uninformed, as injunctive relief may not be invoked on account of anything over which defendant has no control.

5. Same—Similarity of Firm Names—Specialized Group—Commonplace Articles.

Where a business offers its services only to a small highly specialized group, capable of close discrimination, a greater degree of similarity of firm names will be tolerated than where the business offers itself generally to all comers, most of whom will respond to similarity and not investigate identity, especially where the articles of sale involved are commonplace and are purchased without a careful scrutiny of the identity of the vendor.

6. Same—Unfair Competition—Similarity of Names—Likelihood of Deception.

The test applied by the courts on the question of similarity of names as constituting unfair competition is the likelihood of deceiving an ordinary purchaser who is using ordinary care, and in applying that test regard must be had to the nature and physical requirements of the article itself, its cost, the class of persons who purchase it, and the circumstances under which it is purchased.

7. Same—Confusion of Names Because of Similarity Presents Question of Fact.

Whether or not firm name used by defendant partnership similar to name of plaintiff corporation and partnership resulted in confusion or deception in the lines of trade in which the parties are engaged is a question of fact.

8. Corporations—Names—Statutes—Partnerships.

Statute which prohibits one corporation from using a name already in use by another corporation has no application to suit by corporation against a partnership to enjoin latter from using a word in plaintiff's corporate name in name of defendants' firm (Act No. 327, § 6, Pub. Acts 1931).

9. TRADE-MARKS AND TRADE-NAMES—CORPORATIONS—PARTNERSHIPS
—UNFAIR COMPETITION.

Rules of unfair competition are controlling in the matter of
the use of a corporation's name by a partnership or an in-
dividual where there is no statutory prohibition against such
use.

10. SAME—INJUNCTION—FEDERAL—SECONDARY MEANING—TOOL AND
DIE BUSINESS.

Injunction against use of term "Federal" in name "Federal
Tool & Die Company" by defendant partnership was
properly denied in suit by plaintiff corporation and partner-
ship, also engaged in the tool and die manufacturing business
under name of "Federal Engineering Company," where it
was not shown term "Federal" had taken on a secondary
meaning identified with plaintiffs' business to the exclusion
of the defendants'.

Appeal from Wayne; Toms (Robert M.), J. Sub-
mitted June 6, 1946. (Docket No. 21, Calendar No.
43,368.) Decided September 11, 1946.

Bill by Federal Engineering Company, Inc., a
Michigan corporation, and others against William
S. Grieves and another, doing business as Federal
Tool & Die Company, to restrain use of name "Fed-
eral Tool & Die Company." Decree for defendants.
Plaintiffs appeal. Affirmed.

*Moll, Desenberg & Purdy,* for plaintiffs.

*Willis C. Bullard* (*Angell, Turner, Dyer & Meek,*
of counsel), for defendants.

BOYLES, J. Plaintiffs filed a bill of complaint in
the circuit court for the county of Wayne in chan-
cery to enjoin the defendants from using the word
"Federal" in their assumed business name or in
connection with their business. After hearing the
proofs, the circuit judge dismissed the bill of com-
plaint and plaintiffs appeal.

The plaintiff Federal Engineering Company, Inc., is a Michigan corporation organized in 1919, and since continuously engaged in business in Detroit. It is a so-called family corporation, owned by the LeVine family whose members constitute its stockholders, directors and officers. Federal Engineering Company, a copartnership, is also a party plaintiff, the LeVine family having filed in 1940 a certificate of copartnership using the same name, Federal Engineering Company. Since this copartnership was organized in 1940 the sale of plaintiffs' tool and die products has been carried on by the copartnership. While the corporation continued to manufacture, it leased its machinery to the copartnership in 1940 on a rental basis. This was explained by its vice-president as being mainly "for various tax purposes." The defendants are two individuals who filed in 1943 a certificate of copartnership under the name Federal Tool & Die Company.

The essence of the dispute in the case is over the use of the word "Federal" by both parties in their business names. The parties to the dispute in various ways and at various times have adopted the use of the word "Federal" in their respective business operations. In 1942 the defendants filed a certificate of copartnership in Macomb county, where they were then located, under the name "Federal Machine Tool Company." In 1943 the defendants filed a copartnership certificate in Wayne county, where they are now located, under the name "Federal Tool & Die Company." Also in 1943, Saul LeVine, a vice-president of plaintiff corporation, filed in Wayne county a certificate of doing business under the assumed name "Federal Die, Tool & Engineering Company." In 1942, and again in 1943, Daniel LeVine, another of the plaintiff family, filed similar certificates in Wayne county under the as-

sumed names "Federal Machine Tool Company" and "Federal Die, Tool & Machine Company." At least since 1942 the parties to this dispute have been engaged in the same line of business and also in a controversy over the use of the word "Federal" in their business names. Stripped of all verbiage, the question before us for decision is whether plaintiffs are entitled to use the designation "Federal" in their name, to the exclusion of its use by the defendants.

Involved in the dispute are the plaintiff corporation organized in 1919, and the plaintiff copartnership organized in 1940, both under the same name "Federal Engineering Company," and the defendant copartnership organized in 1942 under the name "Federal Machine Tool Company" and in 1943 under the copartnership name "Federal Tool & Die Company." The gist of plaintiffs' claim is that the word "Federal" has acquired a secondary meaning in the tool and die industry which should entitle plaintiffs to its exclusive use in that business, at least in so far as the defendants are concerned.

At the outset, it is obvious that none of the parties hereto could successfully claim that the word "Federal" has any inherent quality which necessarily connects it with the tool and die business. According to exhibits received in evidence there are more than 60 enterprises in Detroit which use the word "Federal" in their business names. Apparently the United States government is generous in its attitude toward the use of the word, although it is understood that there is only one "Federal Building" in Detroit. Plaintiffs' sole claim is that "the trade," meaning the specialized tool and die trade, has accepted the use of the designation "Federal" as identifying the plaintiffs in the trade, and that if this be established as a fact, it excludes the defendants from the right to use the name.

Considering the names used by these parties as an entirety, there is no legally objectionable similarity between the names "Federal Engineering Company" and "Federal Tool & Die Company." Obviously an "engineering" company and a "tool and die" company have no such inherent similarity in names as to cause confusion concerning the business of the respective concerns. As between the two names, that of plaintiffs is less descriptive of the tool and die business than that of the defendants. There can be no doubt but that there are many "engineering" companies engaged in various activities foreign to that of manufacturing or selling tools and dies. It is claimed by plaintiffs that the tool and die industry is highly specialized, limited to a closely-restricted purchasing market. The defendants counter with the claim that in such a market the limited and highly specialized group of purchasers would be cognizant of the difference between two manufacturers or sellers of tools and dies, one using the name of Federal Engineering Company, and the other, Federal Tool & Die Company.

This is not a case where the plaintiffs seek to enjoin defendants from the use of a trade-mark or a trade name in dealing directly with the general consuming public. It is not claimed by plaintiffs that the term "Federal" carries any such connotation that its mere use should be held to be exclusively the right of the plaintiffs. Nor is this a companion to those cases where it has been held that one may prevent the use of his own name by another as unfair competition. The only point made by plaintiffs is that the use of the word "Federal" by plaintiffs in "Federal Engineering Company" gives plaintiffs the right to its exclusive use *in the specialized tool and die industry,* as against the defendants who seek to use the same word "Federal" as a part of their name "Federal Tool & Die Company."

Each case in which this question of unfair competition is presented must be determined on its own facts. *Good Housekeeping Shop* v. *Smitter*, 254 Mich. 592; *Universal Credit Co.* v. *Dearborn Universal Underwriters Credit Corporation*, 309 Mich. 608. Plaintiffs' proofs tend to show that there is confusion in the minds of some purchasers of tools or dies as to which "Federal" company they contact, as prospective customers. But as to that, there is testimony of other witnesses to the contrary. On behalf of plaintiffs it is shown that the only concerns engaged in the tool and die business in Detroit which use the word "Federal" in their names are the parties involved in this case. Occasions were shown where customers made mistakes in mailing, and in business contacts, and where other customers were confused by the designations "Federal Tool & Die," "Federal Tool & Engineering," "Federal Tool & Engineering Company," and that they used these terms indiscriminately. Letters and C. O. D. packages meant for the defendants have been delivered to the plaintiffs. Some confusion was shown in the use of the telephone, which may have been due to the different names used by plaintiffs in the telephone directory, as we note below.

On behalf of defendants, witnesses testified that they had never heard of the Federal *Engineering* Company, others testified that they had heard of plaintiffs referred to as Federal Engineering, but never merely as "Federal" or "the Federal Company." Plaintiffs are located at 850–854 Oakman boulevard, in Detroit, and are listed in the Detroit telephone directory at this address under four different telephone numbers, with the following designations: (1) Federal Die Tool & Engineering Co., (2) Federal Die Tool & Machine Co., (3) Federal Engineering Co., and (4) Federal Tool Die Mach. & En-

gineering Corp. Perhaps some of the confusion of which plaintiffs complain is due to their assumption of these various names in the telephone directory. The defendants are listed at their address, 11072 Gratiot, singly, as Federal Tool & Die Co.

Undoubtedly some confusion may result from the use of the word "Federal" in the names of these parties. However, as was said in *Central Mutual Auto Insurance Co.* v. *Central Mutual Insurance Company of Chicago,* 275 Mich. 554, 560:

"There may be some confusion resulting from the similarity of the names of plaintiff and defendant, but the confusion of which the court takes cognizance must be something more than that resulting from carelessness or ignorance on the part of the uninformed. The strong arm of a court may not, in equity and good conscience, be invoked on account of anything over which defendant has no control."

. Quite in point with the issue here presented is the case of *Eastern Construction Co., Inc.,* v. *Eastern Engineering Corp.,* 246 N. Y. 459 (159 N. E. 397). There, The Eastern Construction Company, Inc., sought to prevent the Eastern Engineering Corporation from using the word "Eastern" in its name. Both corporations were engaged in the same business, building construction, in the same city. The parties came into competition, bidding for contracts for public work. The court said (pp. 462, 464):

"Justification, if any, for the injunction must rest upon a finding that the corporate name which the defendant has adopted, with the sanction of the State, is so similar to the name under which the plaintiff conducts its business that the public may be confused and that some persons may do business with the defendant in the belief that they are dealing with the plaintiff. * * *

"Judicial interference will depend upon the facts proved and found in each case. The test is whether resemblance is calculated to produce confusion as to identity and consequent damage. (*American Steel Foundries* v. *Robertson*, 269 U. S. 372 [46 Sup. Ct. 160, 70 L. Ed. 317].)

"Tried by that test, the evidence in this case is insufficient to justify the injunction which has been granted. Some similarity of name exists, but joined with difference so marked that it can hardly be overlooked, especially by those concerned in matters of such importance as the award of a contract for the construction of a public building. True, not all persons constantly exercise caution in their daily affairs, and a merchant may be injured by deception of the incautious and unwary among his customers. The nature of the business in which the defendant competes with the plaintiff reduces almost to the vanishing point the possibility of deception and damage in this case."

The fact that tools and dies are sold only to particular purchasers in a specialized field does not aid plaintiffs in claiming exclusive right to use the designation "Federal." Sale to a specialized industry or in a restricted market indicates a more discriminating purchasing field than sales of general commodities to the general public. This factor is pointed out in *Federal Securities Company* v. *Federal Securities Corporation*, 129 Ore. 375 (276 Pac. 1100, 66 A. L. R. 934), where the court, after reviewing many decisions, concluded as follows (pp. 397-400):

"It is evident from the foregoing review of cases that where a business offers its services only to a small highly specialized group, capable of close discrimination, as in *Diamond Drill Contracting Co.* v. *International Diamond Drill Contracting Co.*, 106 Wash. 72 (179 Pac. 120), a greater degree of similarity will be tolerated, than where the business offers itself generally to all comers, most of whom

will respond to similarity and not investigate identity; this is especially true where the articles are common-place and are purchased without a careful scrutiny of the identity of the vendor, like clothing, soap, bricks, or a barber's services: * * *

"Applying these conclusions to the case before us we find that both corporations are transacting business with customers who are alert, and capable of discrimination. * * *.

"Both names are truthful; neither is arbitrary nor fanciful. Where the words selected for a corporate name are chosen from the public domain and imply a national business, and where the territory in which it operates is one that will probably be reached through the natural expansion of an established institution, which is in fact national in scope, the former cannot demand a complete exclusion when the latter bids entry, but must be content with such explanatory matter as will prevent deception, although it may not entirely eliminate confusion by the careless."

In the above connection, the record shows that a large part of plaintiffs' business contacts and sales of tools and dies is interstate.

In *Lapointe Machine Tool Co.* v. *J. N. Lapointe Co.*, 115 Maine, 472 (99 Atl. 348), both companies were engaged in specialized manufacture of broaching tools and machines. In refusing to enjoin the defendant from using the name, the court assigned, among others, the following reasons (pp. 486, 487):

"In this connection another important fact should be kept in mind. We are not dealing here with merchandise or articles in common use, which are advertised and sold to the general and indiscriminating public, like shoes, breakfast food, chocolate, soap, candy, &c., &c., articles which may easily be the subject of mistake, but we are dealing with a valuable machine, involving a substantial expenditure of money, designed for a particular work and pur-

chased only by men who are mechanical experts and know precisely what they want and what they are buying. It is a limited and specialized trade. The customers are men with trained mechanical eye and brain who do not purchase a machine of this character and value without careful examination and consideration. These machines are not sold to middlemen, like ordinary articles of trade, but by the manufacturer to the user, either directly by the company or indirectly by its sales agents. The likelihood of palming off the defendant's machines for the plaintiff's, even if the defendant desired to do so, is very remote.

"The test applied by the courts on the question of similarity is the likelihood of deceiving an ordinary purchaser who is using ordinary care, and in applying that test regard must be had to the nature and physical requirements of the article itself, its cost, the class of persons who purchase it, and the circumstances under which it is purchased."

In *Standard Accident Insurance Co.* v. *Standard Surety & Casualty Company of New York*, 53 Fed. (2d) 119, the issue concerned the use of the word "Standard" in the names of both parties. The court took into consideration the fact that both companies were engaged in a business limited to a specialized market, not offering to the general public, and said (p. 121):

"The conclusion that must be drawn, therefore, is that the possibility of confusing the general public is by no means the test to be applied, and that the professional insurance men and experts who are in a sense the plaintiff's public, are not likely to be misled merely by the degree of similarity in this case."

To the same effect, see *Pyle National Co.* v. *Oliver Electric Manfg. Co.* (C. C. A.), 281 Fed. 632, where the court said (pp. 634, 635):

"When we come to the proofs in the case, we find defendant guilty of no deception in the conduct of its business whatever. As the railway systems of the country are the only customers complainant has for its patented machines, and as these companies employ purchasing agents highly skilled and equipped with technical knowledge of what is desired and used by their company, and, as well, the value of the same, deception, even if attempted by defendant, would be both impractical and futile."

In *Reliance Steel Corporation* v. *Reliance Trading Corporation,* 56 Fed. Supp. 549, the question for decision was whether the use of the word "Reliance" by both parties amounted to unfair competition. The court said (p. 551):

"Plaintiff uses the name 'Reliance Steel Corporation' and defendant 'Reliance Trading Corporation.' To me the distinction in the name is perfectly obvious. Without stating a general principle, the word 'Reliance' is a common abstract term of which no one can have a monopoly. *Vide* 'Civil Service,' *Civil Service Supply Association* v. *Dean,* L. R. 13 Ch. Div. 512; 'Antiquarian,' *Choynski* v. *Cohen,* 39 Cal. 501 (2 Am. Rep. 476).

"While it is true that the business of plaintiff and defendant overlap, defendant's though smaller, covers a wider field and includes 'trading' in machinery, while the plaintiff's business is confined to rolled steel. Plaintiff is a processor and distributor, while defendant is essentially a jobber. The wares which the parties sell are of a character which would be purchased by more specialized and discriminating purchasers. 'The method of selling the goods, and the ordinary circumstances attending the sale must be kept in mind. While the court is not bound to interfere, where ordinary attention will enable purchasers to discriminate between the trade marks used on the goods manufactured by different parties, nevertheless, the character of the article, as well as

the use to which it is put, the kind of people who are likely to ask for it, and the manner in which it is probable it will be bought, must not be lost sight of.' Nims on Unfair Competition and Trade Marks, p. 838. 'The rule which applies to expensive china-ware, or to goods sold only to railroad purchasing agents, differs from that governing cases involving tobacco, gum and other low-priced products.' *Id.,* p. 841, and cases cited. Cf. also *Eastern Construction Co., Inc.,* v. *Eastern Engineering Corp.,* 246 N. Y. 459 (159 N. E. 397); *Diamond Drill Contracting Co.* v. *International Diamond Drill Contracting Co.,* 106 Wash. 72 (179 Pac. 120); *Lawyers Title Insurance Co.* v. *Lawyers Title Insurance Corporation,* 71 App. D. C. 120 (109 Fed. [2d] 35).''

In *Metal Craft Co.* v. *Grand Rapids Metalcraft Corporation,* 255 Mich. 638, both parties were Michigan corporations. Plaintiff's place of business was in Detroit, defendant's main office was in Grand Rapids but it maintained a sales office in Detroit. Each manufactured and sold sundry metal articles largely used by manufacturers of automobile bodies. The court, in denying plaintiff an injunction to prevent the defendant from using the term ''Metalcraft'' in its corporate name, said (pp. 640, 641):

''The trade of these parties is not with the general public but largely with the rather restricted class of manufacturers above noted.     *     *     *

''Whether defendant's use of this corporate name has resulted in confusion or deception in the lines of trade in which these parties are engaged was a question of fact. Aside from complaining of erroneous calls on the telephone, plaintiff offered in evidence seven or eight exhibits indicating miscarriage of mail matters.     *     *     *

''The slight confusion indicated by the foregoing record is not at all persuasive that defendant's corporate name is so nearly similar to plaintiff's as to

lead to confusion or deception within the prohibition of the statute. We are fully in accord with the quoted finding of the trial judge, and are of the opinion that the record does not disclose confusion or deception resulting from the similarity of these two corporate names of such a character as to justify granting equitable relief.''

In the companion case of *Metal Craft Co.* v. *Metalcraft Heater Corporation,* 255 Mich. 642, the same plaintiff was granted injunctive relief against the defendant Metalcraft Heater Corporation. This case emphasizes a rule of law applicable to all such cases, stated therein as follows (p. 645):

''Each case depends upon the application of principles to its own peculiar facts.''

Applying this principle to the facts of the case, the court said (p. 646):

''In the *Grand Rapids Metalcraft Corporation Case* the defendant had distinguished itself from plaintiff in a manner to impress an ordinarily intelligent and careful person by commencing the name differently and by localizing it to a city. Here the defendant's name was naturally calculated, even though without design, to confuse it with plaintiff's in the trade, the confusion which resulted was such as would ordinarily have been anticipated, and the statute applies.''

Plaintiffs rely on decisions in this State where a *corporation* has been enjoined from using a name so nearly similar to one already in use by another *corporation* as to lead to confusion or deception. In the case at bar one of the plaintiffs is a corporation, the other plaintiff is a copartnership, and the defendant is also a copartnership. Act No. 327, § 6, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 10135-6, Stat. Ann. § 21.6), provides:

"No corporation shall assume any name which is likely to mislead the public, or any name already in use by any other existing corporation of this State, or corporation lawfully carrying on business in this State, or so nearly similar thereto as to lead to confusion or deception."

In this State the use of a name by a *copartnership* similar to that already in use by a *corporation* is not governed by the above statute.

"In view of the fact that plaintiff is a Michigan corporation and defendant a copartnership, Act No. 327, § 6, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 10135-6, Stat. Ann. § 21.6), had no application as that section relates solely to corporations.

"The rule applicable in the case at bar may be found in *Good Housekeeping Shop* v. *Smitter,* 254 Mich. 592, where we said:

" 'Were it not for the statute, another corporation could take the name unless prohibited under the doctrine of unfair competition. *Nebraska Loan & Trust Co.* v. *Nine,* 27 Neb. 507 (43 N. W. 348, 20 Am. St. Rep. 686). There being no statutory prohibition against its use by partnerships or individuals, the rules of unfair competition are controlling.' " *Peninsular Stove Co.* v. *Augst,* 288 Mich. 465, 469, 470.

See, also, *Grand Rapids Furniture Co.* v. *Grand Rapids Furniture Shops,* 221 Mich. 548.

In *Young & Chaffee Furniture Co.* v. *Chaffee Brothers Furniture Co.,* 204 Mich. 293, the dispute arose over the claimed similarity in names of two corporations. Plaintiff sought to enjoin defendants from using "Chaffee Brothers" as a part of its corporate name. Plaintiff was denied relief on the facts adduced, as well as under the statute, for reasons stated as follows (pp. 296, 297, 302, 303):

"A comparison of the names of these two corporations does not persuade us that from the names alone uncertainty and confusion is liable to arise. We think the person of ordinary intelligence would quite likely assume from the two names that they were not one and the same company. That there might be some confusion to the careless or indifferent reader of them is possible. But a court of equity should not issue its stringent writ of injunction upon such bare possibilities. We are impressed that relief under this statute alone should not be had.   *   *   *

"Have they (defendants) so circumscribed themselves as to be estopped from using their own name in the furniture business in Grand Rapids? We think not.   *   *   *

"It is urged that great confusion has arisen by the use of the name adopted by the corporate defendant and considerable testimony to this effect of a general character was introduced by the plaintiff. We are not impressed from an examination of all the testimony, including the exhibits, that outside of some petty annoyances, such as telephone calls and an occasional small payment of money to plaintiff, which belonged to defendant, that there has been any considerable amount of confusion, or that plaintiff has suffered annoyance consequential in any amount when the amount of their business is considered."

The circuit judge who heard the instant case concluded that plaintiffs had failed to prove that the name "Federal" had taken on a secondary meaning so as to be identified with plaintiffs' tool and die business to the exclusion of the defendants. Under all the circumstances shown by the record, we conclude that the injunction sought by plaintiffs was properly denied.

The decree dismissing plaintiffs' bill of complaint is affirmed, with costs to appellees.

CARR, BUSHNELL, SHARPE, REID, and NORTH, JJ., concurred. BUTZEL, C. J., did not sit. STARR, J., took no part in the decision of this case.