WEEKS et al. v. VARIETY NUT & DATE CO. et al.

No. 10006.

United States District Court
E. D. Michigan, S. D.

Feb. 20, 1952.

Bates, Teare & McBean, Cleveland, Ohio, for plaintiffs.

Daniel G. Cullen, Detroit, Mich., for defendants.

PICARD, District Judge.

Action to enjoin defendants from making or selling edible nuts in a certain styled package, on two grounds:

First, that the package is a patented one, and

Second, that defendants are guilty of unfair competition because their package is practically a duplicate of the patented article and intended to deceive the public.

### Statement of Facts.

Plaintiffs have been in the nut business for many years and after numerous attempts reached the market with their present package over twelve years ago.

It is a sealed, moisture-proof, cellophane or other flexible material, transparent bag having a relatively stiff backing of sheet material with a wrapper covering the flat-edged portion of the transparent container on the front and back sides thereof. The contained nuts are exposed with the wrapper forming a frame for the flexible material and, with the backing as a support, the package can be placed in a perpendicular position.

The infringment is admitted if the device is patentable and the patentee, while acknowledging that there is nothing particularly new in his invention, claims that it is a combination which produces new results, makes the article more salable, permits the crushing of nuts for cooking purposes without removing them from inside the bag and permits display at certain advantageous places in stores, particularly near the check-out counters.

Admittedly, the patentee has made a study of the nut business, experimenting with different bags to preserve the freshness of his products and to make them attractive. It further appears that plaintiffs were on the verge of inventing their own bag-making machine when the machine they now use came on the market making available to plaintiffs exactly what they wanted.

The facts also indicate that defendants undoubtedly sought to take what the courts have termed "a free ride" on the past advertising of plaintiffs by merchandising a similar container for nuts, although the color of the wrapper flap is a little different. Defendants threatened plaintiffs' firm hold on the package nut business because retailers were able to sell defendants' products cheaper than they could plaintiffs' and some of them made a switch from plaintiffs' to defendants' nuts.

There is no evidence that defendants or any of the retailers ever attempted to "palm off" defendants' nuts as those of plaintiffs' and no evidence that there was confusion in the mind of the public as to whether it was getting plaintiffs' nuts instead of defendants'. In fact the evidence fails to establish any secondary meaning in plaintiffs' package.

### Conclusions of Law

#### 1. As To Patentability.

It is admitted that plaintiffs used the bag made under the Zwoyer patent No. 1,986,422, issued January 1, 1935, and put a back on it, covering part of both the back and the front with an attractive flap. There is no new result in this combination. The stiff material does just what it has always done when placed as a back to a bag. It holds it up. The Zwoyer bag provides no new function in plaintiffs' device nor do any of the old elements which comprise this device perform any additional or other functions in the combination than they perform out of it. "This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly."

We believe that this case is covered entirely by A. & P. Tea Co. v. Supermarket

530

Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 130, 95 L.Ed. 162, from which the above is quoted.

In our opinion this patent is even more vulnerable than the one involved in the A. & P. Tea Co. v. Supermarket Equipment Corp., supra, case since anyone versed in the art would eventually arrive at the same standing bag that plaintiffs claim to have invented while the chain store industry waited seventeen years before Weingarten introduced the checkout counter. As a matter of fact in the case at bar the proof was overwhelming that there have been many "standing display bags" and patents covering them shown in retail stores for years. At least ten other patents were introduced wherein the cellophane container or an open-faced package had been used with some kind of a stiff backing either inside or outside the bag, and the resulting combination used to display the contents, whether it was a silk handkerchief, gum, noodles, or sugar.

True, plaintiffs do claim that their package has a feature in the combination that it didn't have before and that is that you can crush the nuts while still in the container, by the use of a rolling pin, without breaking the package. But this does not make it patentable and it isn't part of any claim in the patent. In any event such a result would depend somewhat upon the strength of material used in the bag itself and how filled it was. So far as we know if you attempted to crush the nuts in defendants' bag as demonstrated with plaintiffs', the result to bag, nuts, and the kitchen might be disastrous. There is no evidence that the bag of defendants would accomplish the same thing as claimed for plaintiffs' packaging.

2. As To Unfair Competition.

■ As to the second question it would appear at first blush that plaintiffs' position has more merit and if this case was before us under the old decisions we would probably be obliged to issue an injunction on the basis of unfair competition. This is particularly true of N. K. Fairbank Co. v. R. W. Bell Mfg. Co., 2 Cir., 1896, 77 F. 869, known far and wide as the Gold Dust Twin case. We believe that the package devised by defendants here is much more deceiving to the public than the package employed by Bell in the Gold Dust Twin case. In fact this seems to be true of most decisions until comparatively recent ones.

Under the present trend, however, the courts have been very careful not to stifle competition unless there exist certain essential facts. Herein there is no design patent even claimed and under the present decisions as we interpret them if the plaintiffs are to prove unfair competition they must show that the nonfunctional features of their bag have a secondary meaning to the public. There must be a reliance by the public on the features of the package as distinguishing plaintiffs' wares from similar competitive goods. Charles D. Briddell, Inc., v. Alglobe Trading Corp., 2 Cir., 194 F.2d 416. Smith, Kline & French Laboratories v. Waldman, D.C., 69 F.Supp. 646.

■ It is not necessary, of course, that the public know the name of the manufacturer but the fundamental features of a trade dress may not be exclusively appropriated without the secondary meaning. G. & C. Merriam Co. v. Saalfield, 6 Cir., 198 F. 369; Upjohn Co. v. William S. Merrell Chem. Co., 6 Cir., 269 F. 209; Bayer Co. v. United Drug Co., 2 Cir., 272 F. 505.

■ We hold here that the alleged common features are nonfunctional but whether nonfunctional or functional they are without secondary meaning, and if they were considered functional the doctrine of secondary meaning would have no application. Gum v. Gumakers of America, 3 Cir., 136 F.2d 957.

■■ There is no claim of trademark infringement and since the burden of proof as to claimed distinction and secondary meaning is on the plaintiffs, Kellogg Toasted Corn Flake Co. v. Quaker Oats Co., 6 Cir., 235 F. 657, Beneficial Industrial Loan Corp., v. Allenstein, 5 Cir., 173 F.2d 38, a burden which plaintiffs have failed to sustain, no relief is available under the claim of unfair competition.

Judgment for defendants.