The TAS–T–NUT COMPANY, a Maryland Corporation, Plaintiff,

v.

VARIETY NUT & DATE COMPANY, a Michigan Corporation, Defendant.

No. 13923.

United States District Court
E. D. Michigan, S. D.

Jan. 11, 1956.

Barnes, Kisselle, Laughlin & Raisch, Detroit, Mich., Bates, Teare & McBean, Cleveland, Ohio, for plaintiff.

Cullen & Cantor, Detroit, Mich., for defendant.

PICARD, District Judge.

This is an unfair competition case in which the important facts are not in dispute.

### Findings of Fact

Plaintiff has been in the business of producing and selling cooking nuts for over twenty-five years under the style name of "Tas-T-Nut". In 1950 Weeks, owner of "Tas-T-Nut" and plaintiff brought action to prevent defendant from using their particular container which was a dispenser displaying nuts in a package about 6 inches in length and 3 inches in width that had a cellophane "window" about 4 inches by 2 inches. The name "Tas-T-Nut", the price and the color—red and blue—made it a distinctive package and not only did plaintiffs desire their patent rights protected but they also claimed unfair competition. In that case this court (Weeks v. Variety Nut & Date Co., D.C.1952, 103 F.Supp. 528), found that plaintiffs'

patent was invalid for lack of invention and that proof of unfair competition was insufficient. The case was appealed; this court was sustained, 6 Cir., 1953, 208 F.2d 414, and certiorari denied.

Shortly thereafter plaintiff as a corporation changed its style of package but that container was also closely imitated by defendant. At this point, in 1953, both strategy and tactics of the parties changed. Plaintiff's package up to 1953 was red and blue while defendant's color combination was red and yellow, when for some reason of its own plaintiff changed the color of its package to be exactly the same as defendant's—a color defendant had then been using for about three years. So this present action involves not only plaintiff's new package—the colors of which are now red and yellow—but includes plaintiff's other packages, red and blue and yellow and green. In this action plaintiff claims that its packages—color combination and all—have a secondary meaning to housewives who purchase cooking nuts; and that not only does defendant's package lend itself to confusing the buying public but it lends itself easily as being the exact article produced and distributed by plaintiff.

As for "palming off" also claimed, this court does find evidence that at least one or two retail outlets told an individual hired by plaintiff for the purpose of later testifying, that "these nuts (Pic-A-Nut) are the same as the other nuts"—evidently meaning Tas-T-Nuts. We do not consider this "palming off" seriously since the package when observed at that proximity contains the trade-mark of defendant in large letters which would tell any individual purchasing it that he or she was getting "Pic-A-Nuts" instead of "Tas-T-Nuts." Actually it wasn't the "package" that was being palmed off nor involved in deceit. It was the retailer or clerk deliberately telling a falsehood. True the package aided in the falsification, (New England Awl & Needle Co. v. Marlborough Awl & Needle Co., 168 Mass. 154, 46 N.E. 386,) but at that distance the package of itself was direct evidence of the difference between plaintiff's and defendant's respective trade-marks and in this day and age where housewives know quite a bit about trade-marks—at least insofar as the difference in products is concerned—we believe that the presence of the trade-mark "Pic-A-Nut" at least should have offset the so-called palming off done by the retailer.

Incidentally, neither side claims anything for the color combination although to this court the fact that housewives recognized the package as containing the nuts they wanted (or said they thought they recognized such package as plaintiff's package) was because of the color combination as much as it was the display window, the size of the package, or position on the retailer's shelf.

The facts also show beyond dispute that both plaintiff's and defendant's nuts are displayed at not to exceed arm's length from the eyes of the purchaser and it is very easy to read the trade-mark on each package, to-wit "Tas-T-Nut" on one and "Pic-A-Nut" on the other. Nevertheless there is no denying and defendant freely admits, that the packages have much in common. For example—

1. Contrasting colors on side and end flaps;

2. Top and bottom flaps folded over side flaps and with the trade-mark in the upper left corner on the top flap;

3. Each trade-mark has seven letters with the middle letter separated from the others by hyphens;

4. Price location in a circle at the upper right of the top flap;

5. White band across the bottom flap;

6. Descriptive words on each side flap;

7. Use clause on top flap on each package, with exactly same words in same order;

8. Company name and address on bottom edge of the bottom flap;

9. Beveled corners on top and bottom flaps;

10. Identical overall dimensions; and

11. Rectangular transparent window.

■ There is no denying furthermore, that the careless purchaser could easily be confused. In Michigan under some circumstances such people are taken into consideration. Federal Engineering Co. v. Grieves, 315 Mich. 326, at pages 334, 335, 24 N.W.2d 138—a Michigan case which says that plaintiff can have protection for careless purchaser. One could have bought Tas-T-Nuts one week and become so familiar with the package that the next week without specifically looking for the name but knowing he liked nuts in a certain shaped package and a certain color container, purchase Pic-A-Nuts believing them to be the same as he had purchased before. But here we must point out that since plaintiff has taken the color of defendant's package it might well be that the confusion was due to the color scheme entirely. Although, of course, color cannot be a subject of unfair competition of itself except in arrangement with some other design and style, nevertheless, while this is true it doesn't prevent the possibility or even the probability of the buyer confusing plaintiff's package with defendant's as much as defendant's container with plaintiff's, thus removing to some extent the equities that were seemingly entirely with plaintiff when the case was before us in the initial action. We cannot refrain, therefore,—even though there is no monopoly on color— from the conclusion that in the particular package before us color is very important in giving distinctiveness to the package.

We have in addition arrived at the conclusion and find that defendant is deliberately trying to take advantage of the great amount of advertising done by, the good reputation earned, and the style of package that has been gotten out by plaintiff.

## Conclusions of Law

First, plaintiff insists that it is not bringing this action under the Lanham Trade-Mark Act of 1946, 15 U.S.C.A. § 1051 et seq., and that the law of the State of Michigan—and only the law of Michigan—prevails. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. Undoubtedly if this is true then it might be assumed that possibility of plaintiff receiving its injunction would be materially enhanced under Michigan law because the question is at first blush left much more for the court under Michigan law than under federal decisions. But as stated in Socony-Vacuum Oil Co. v. Rosen, 6 Cir., 108 F.2d 632, 635—

"*These legal principles* [referring to fundamentals of the unfair competition law] *have been so long established and are so well known as to need no amplification. The difficulty arises in applying them to variant facts of different cases.* Royal Baking Powder Co. v. Royal, 6 Cir., 122 F. 337." (Emphasis ours.)

It is also well to note that plaintiff in its bill of complaint does not plant its action under Michigan law. In fact it could have argued at the time it presented its brief that its claim was laid under Federal and not Michigan law particularly since no great stress was placed upon "Michigan law" prevailing until after the Court of Appeals decided West Point Manufacturing Co. v. Detroit Stamping Co., 6 Cir., 222 F.2d 581. We note also that plaintiff quotes in support of its position not only Michigan law but Federal law whenever there is anything in the Federal law that may bolster up its contention.

But regardless of whether plaintiff intended to bring its action under Michigan law or the Lanham Act this circuit said in Socony-Vacuum Oil Co. v. Rosen, supra and the third circuit in Campbell Soup Co. v. Armour & Co., 175 F.2d 795 that the law relating to unfair competition is the same in both federal and state courts. And here we go further in this connection because we hold that the law

of Michigan was not altered by the West Point case, upon which we have relied chiefly for our decision since it is the more recent and most exhaustive opinion on the subject we have found. We insist that the West Point decision does not alter the law on unfair competition as it existed between Michigan and federal laws; it merely filled in the gaps that were apparent where the issues in other cases were more particularly directed as to a certain phase or phases of unfair competition. In following the federal decision (West Point) we believe we are following Michigan law. This is evidently also true of plaintiff's contention a fortiori since it maintains at one point that whether we are governed by federal or Michigan law our holding must be the same.

Fortunately or unfortunately this court was concerned with that West Point litigation and we find that the instant case is not as strong in favor of plaintiff in many ways as that case was. There are, of course, some points where this action is stronger, particularly in the evidence relating to palming off by defendant, but while any claim of palming off is fortified only by actions of others such as clerks in stores, it is true that actually defendant furnished the material by which the clerks had the opportunity to do any palming off. On the other hand any person who could read and who could be prevailed upon to believe that the brand "Tas-T-Nut" was exactly the same as the brand called "Pic-A-Nut" is not the average housewife. It's impossible to guard against that kind of buying or purchasing or it might be well to add that a clerk having such persuasive powers be added to our country's diplomatic service. West Point Manufacturing Co. v. Detroit Stamping Co., supra. And while, unlike defendant, we do not justify such action as laudable nor such result as justifiable "switch-eroos" this does not change the fact that the label was there within a foot or two of the purchaser's eyes. He or she should have known that what the clerk was saying was not the truth.

Having therefore decided that the Michigan and Federal law is the same the question then is does the West Point case, supra, cover the situation here and how?

Let us inquire.

In West Point, supra, plaintiff's patent had expired. This is true here although we don't look upon this as material since no attempt has been made by plaintiff to claim any rights under its patent.

In West Point, supra, also, defendant had copied plaintiff's toggle clamp in every particular—the functional as well as the non-functional parts. (Note—the Court of Appeals may not agree with us on this but it did not decide the West Point case on that issue). Here it is the same fact situation. All the Court of Appeals did in the West Point case was to lay down two rules to define unfair competition and then try to determine whether these yardsticks had been met. Those rules were:

First, had defendant used a trade-mark at a conspicuous place on its toggle clamp even though it had copied plaintiff's product in all particulars?

The Court of Appeals found that the Detroit Stamping Company did use its own name and trade-mark in a conspicuous place on its toggle clamp, a fact that weighed heavily with the court and then it added the second possibility in these words at page 596 of 222 F.2d—

"Since the trade-marks and advertisements clearly disclosed that appellant was the maker of its clamps, no issue of 'secondary meaning' arises in this case so that the question whether appellant copied the non-functional features of appellee's clamp is here irrelevant."

This would indicate that where there has been an open and conspicuous display of defendant's trade-mark clearly disclosing that defendant was the manufacturer of the package as here there can be no instances of unfair competition based on plaintiff's product having attained a secondary meaning during the seventeen

years that it had been protected by its patent.

And even if the issue of "secondary meaning" were the real question here we are obliged to admit that the evidence on that point presented by plaintiff is not overwhelming.

We have mentioned the fact that color plays an important part in identifying this package. It is not the cellophane window in front. Many foods have that feature—coffee, sugar, vermicelli, dates and others. Plaintiff's package, while it had utility value, is not so unique that without combining all its features including color you have a package that directs your attention to where you will find some cooking nuts. There was no real substantial proof that plaintiff's package had attained a secondary meaning at any time either before 1953 or after, chiefly for the following reasons:

1. It was not shown that consumers cared who manufactured the nuts that plaintiff's package contained;

2. It was not shown that the appearance of plaintiff's package signified to consumers that it had its origin in any particular manufacturer; (See West Point Manufacturing Co. v. Detroit Stamping Co., supra) and

3. What evidence was introduced was concerning a time after September 1953—and not before.

Any secondary meaning that was proven could as well have been claimed by defendant as by plaintiff. While we believe that the law laid down in the West Point case is sufficient to decide this case, we also believe that Singer Manufacturing Co. v. June Manufacturing Co., 163 U.S. 169, 16 S.Ct. 1002, 41 L.Ed. 118, quoted with approval by Judge McAllister, is very illuminating. The famous Singer case covers the issues here in their entirety. Briefly the facts were that after the patents of the Singer Sewing Machine Company had expired defendant copied a Singer sewing machine in every particular. It even used the words "Improved Singer" on an oval tag in the same place on defendant's machine as the old Singer. Of course this tag was not necessary as a functional part. Nor were any other non-functional features which were copied. Nevertheless here is what the Circuit Court N. D. Illinois in Singer Manufacturing Company v. June Manufacturing Co., 41 F. 208, at page 213 said:

" * * * if the manufacturer of a patented machine adopts a peculiar style or form in which to embody the working mechanism covered by his patents, or any special mode of ornamentation to make the machine attractive and salable, such form of construction and ornamentation, although not strictly essential to the operation of the mechanical device covered by the patents, still becomes a part of the machine as presented to the world on the expiration of the patents. It goes to the public in the dress and with the features which have been given it by its manufacturer under the patents. It is presumable that an intelligent manufacturer, wishing to secure a large sale for a mechanical device of which he has a monopoly, especially in a machine of the kind under consideration, which has become a part of household furniture, used his best skill and taste as a constructor to make the machine convenient and attractive, so as to give the best possible embodiment of his patented mechanical devices; and, * * * this dress, thus given to the machine, becomes a part of it, and the public, when they have the right to use the patent, have the right to use the dress in which the patentee clothed it. Hence any sewing-machine manufactured by another person, after the expiration of the patents, upon the principles covered by the Singer patents, may be a perfect imitation of the machines which the complainant or its predecessors manufactured under their patents." (Emphasis ours.)

In other words, since the Singer Sewing Machine Company had seventeen

years advantage on a monopoly to make its particular product attractive to the housewife the expiration of its patent gave the public not only the right to use the functional parts of that machine but the non-functional parts as well. (Note: This case was reversed, however, because defendant had not placed "a plain and unequivocal indication of the origin of manufacture" [163 U.S. 169, 16 S.Ct. 1015] on its product.)

Nothing more can be added here. Whether we admire defendant's actions or despise them is immaterial. Here the patent has expired. Let us accept as a fact that plaintiff's package went to the public in a certain "dress"—although it had to change the color of its dress in order to have its product look like defendant's in all particulars—and you have the Singer and West Point cases.

■ It is therefore the holding of this court that no injunction will issue. We hold that the West Point case does apply and dismiss the bill of complaint.