**TAS–T–NUT COMPANY, Appellant,**
v.
**VARIETY NUT & DATE COMPANY,**
Appellee.
No. 12923.

United States Court of Appeals
Sixth Circuit.
June 10, 1957.

Albert R. Teare, Cleveland, Ohio, Jerome F. Kramer, Cleveland, Ohio, Alfonse J. D'Amico, Detroit, Mich., Bates, Teare & McBean, Cleveland, Ohio, Barnes, Kisselle, Laughlin & Raisch, Detroit, Mich., on brief, for appellant.

Bernard J. Cantor and Daniel G. Cullen, Detroit, Mich., for appellee.

Before MARTIN, MILLER and STEWART, Circuit Judges.

STEWART, Circuit Judge.

The appellant brought this suit in the district court asking for an injunction and money damages. The wrong complained of was the appellee's unfair competition. No trademark infringement was alleged, and federal jurisdiction was grounded exclusively upon diversity of citizenship. Deciding that no unfair competition had been proved, the district court dismissed the complaint. 1956, 136 F.Supp. 775.

For almost thirty years the appellant has produced packaged nut meats for sale at retail throughout most of the United States, including the state of Michigan. The product is sold under the trade name "Tas-T-Nut," and since 1936 has been marketed in a package consisting of a moisture-proof cellophane bag and a surrounding outer wrapper with an open face, which permits the nut meats to be seen through the cellophane. The physical construction of the package was covered by a patent which expired in July, 1955.

The appellee also produces packaged nut meats for retail sale in Michigan, under the trade name "Pic-A-Nut." In 1950 it began to market its product in a package substantially identical in physical construction to the appellant's. Because of this, the appellant brought an action against the appellee in that year for relief against patent infringement and unfair competition. The district court held that the claims of the patent in suit were invalid, and that the proof was insufficient to establish unfair competition. Weeks v. Variety Nut & Date Co., D.C.E.D.Mich.1952, 103 F. Supp. 528. This decision was affirmed on appeal. Weeks v. Variety Nut & Date Co., 6 Cir., 1953, 208 F.2d 414.

Although in physical construction the packages involved in that litigation were substantially identical, appellant's and appellee's packages were dissimilar in appearance because of differing color combinations, and differing arrangement and positioning of labeling.

In 1953 the appellant embarked upon a plan of color coding its packages for different varieties of nut meats, the three new color combinations being red and yellow, green and yellow, and blue and

yellow. In 1954 the appellee redesigned the appearance of its packages, changing its previous red and yellow package to the same shades of those colors used by the appellant, introducing green and yellow and blue and yellow packages, and arranging the labeling in such a way as strikingly to resemble the overall appearance of the appellant's packages.

Upon the appellee's refusal to discontinue the use of these packages, the appellant filed the present suit. Shortly before the trial the appellee introduced additional packages which had a diamond-shaped design instead of printed words along the sides, but which otherwise were identical to its 1954 designs, and use of these packages was also sought to be enjoined in the present action.

The district court found that the appellee's packages "have much in common" with those of the appellant.[1] The court further found "that the careless purchaser could easily be confused. * * * One could have bought Tas-T-Nuts one week and become so familiar with the package that the next week without specifically looking for the name but knowing he liked nuts in a certain shaped package and a certain color container, purchase Pic-A-Nuts believing them to be the same as he had purchased before." The court also found that the appellee "is deliberately trying to take advantage of the great amount of advertising done by, the good reputation earned, and the style of package that has been gotten out by [appellant]." Moreover, the court recognized that there was evidence that customers actually had confused the products, and that there had been an actual palming off by retailers of the appellee's product as that of the appellant.

The court concluded, however, that because the appellee placed its own trade name in a conspicuous position on its packages, it was not guilty of unfair competition. This court's decision in West Point Manufacturing Company v. Detroit Stamping Company, 6 Cir., 1955, 222 F.2d 581, and the Supreme Court's earlier decision in Singer Manufacturing Company v. June Manufacturing Company, 1896, 163 U.S. 169, 16 S.Ct. 1002, 41 L.Ed. 118 were thought to compel this conclusion. Those cases express the now-settled law that, when a patent covering an article of manufacture has expired, the original manufacturer cannot prevent another from making and marketing an exact copy of the article, so long as the other does not deceive the public by passing off his product as that of the original manufacturer. In the scholarly and exhaustive opinion written for the court by Judge McAllister in the West Point case, there are analyzed many decisions expressing the basic proposition that the identical imitation of the goods of another does not in itself constitute unfair competition. "The public interest in competition ordinarily outweighs the interest in securing to a person the rewards of his ingenuity in making his product attractive to purchasers." 222 F.2d 581, 589.

Insofar as the packages here in suit can themselves be considered "products," the rule of law expressed in the West Point case indeed gave the appellee complete freedom to copy the appellant's packages, so long as the appellee clearly affixed its own name. Thus, the West Point rule would permit the appellee to use with impunity packages of identical

---

1. The court noted the following similarities: "(1) Contrasting colors on side and end flaps; (2) Top and bottom flaps folded over side flaps and with the trademark in the upper left corner on the top flap; (3) Each trade-mark has seven letters with the middle letter separated from the others by hyphens; (4) Price location in a circle at the upper right of the top flap; (5) White band across the bottom flap; (6) Descriptive words on each side flap; (7) Use clause on top flap on each package, with exactly same words in same order; (8) Company name and address on bottom edge of the bottom flap; (9) Beveled corners on top and

physical construction, size, and shape as the appellant's.[2]

■ Moreover, it is equally clear that the appellant could acquire no proprietary right in the color or colors used on its packages, as such. James Heddon's Sons v. Millsite Steel & Wire Works, Inc., 6 Cir., 1942, 128 F.2d 6; Diamond Match Co. v. Saginaw Match Co., 6 Cir., 1906, 142 F. 727; Campbell Soup Co. v. Armour & Co., 3 Cir., 1949, 175 F.2d 795. The obvious reason is well stated in the Campbell Soup opinion: "If they may thus monopolize red in all of its shades the next manufacturer may monopolize orange in all its shades and the next yellow in the same way. Obviously, the list of colors will soon run out." 175 F.2d at page 798.

The basis of the appellant's present complaint, however, was not the appellee's use of packages constructed identically to its own, nor the appellee's use of a particular color or colors, but its deceptive imitation of the overall appearance of the appellant's trade dress in the arrangement, design, and collocation of printing and ornamentation.

■■ The rule expressed in the West Point case does not preclude the appellant from securing relief from the appellee's conduct, if the appellant's trade dress has acquired a secondary meaning. The difference in the protection against imitation which will be accorded to an article of commerce on the one hand, and to a package in which the article is marketed on the other, was long ago noted. Writing for the Supreme Judicial Court of Massachusetts in Flagg Mfg. Co. v. Holway, 1901, 178 Mass. 83, 59 N.E. 667, that court's then Chief Justice Oliver Wendell Holmes pointed out that the law which permits one to market an identical copy of his competitor's product does not give him freedom to imitate the appearance of the package in which the article is sold. As there pointed out, the public policy which permits the imitation of an article of commerce is without relevance to the dress in which the article is marketed. " * * * [T]he label or ornament is a relatively small and incidental affair, which would not exist at all, or at least would not exist in that shape but for the intent to deceive; whereas the instrument sold is made as it is, partly at least, because of a supposed or established desire of the public for instruments in that form." 178 Mass. 91, 59 N.E. 667.

The same point was recently made by the United States Court of Appeals for the Ninth Circuit in Pagliero v. Wallace China Co., 9 Cir., 1952, 198 F.2d 339. In that case the court said: "If the particular feature is an important ingredient in the commercial success of the product, the interest in free competition permits its imitation in the absence of a patent or copyright. On the other hand, where the feature or, more aptly, design, is a mere arbitrary embellishment, a form of dress for the goods primarily adopted for purposes of identification and individuality and, hence, unrelated to basic consumer demands in connection with the product, imitation may be forbidden where the requisite showing of secondary meaning is made." 198 F.2d 343.

This same distinction was implicitly recognized by the Supreme Court in Kellogg Co. v. National Biscuit Company, 1938, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73. There the Court held that Kellogg was entitled to call its competing product "shredded wheat" and to produce it in the same pillow-shaped form as the plaintiff's product. But Justice Brandeis' opinion carefully pointed out: "Each company sells its biscuits only in cartons. The standard Kellogg carton contains fifteen biscuits; the plaintiff's twelve. The Kellogg cartons are distinctive. They do not resemble those used by the plaintiff either in size, form, or color.

---

bottom flaps; (10) Identical overall dimensions; and (11) Rectangular transparent window."

**2.** This issue was in fact decided in the previous litigation between the parties. Weeks v. Variety Nut & Date Co., 6 Cir., 1953, 208 F.2d 414.

And the difference in the labels is striking." 305 U.S. 120, 59 S.Ct. 114.

■ This court has consistently held that when the unfair competition complained of is the marketing of a product in containers or labels deceptively similar to the first comer's containers or labels which have acquired a secondary meaning, the competitor cannot avoid liability merely by affixing his own name. Chesebrough Mfg. Co. v. Old Gold Chemical Co., 6 Cir., 1934, 70 F.2d 383, certiorari denied 293 U.S. 599, 55 S.Ct. 116, 79 L.Ed. 691; E. Kahn's Sons Co. v. Columbus Packing Co., 6 Cir., 1936, 82 F.2d 897. Writing for the court in the Chesebrough case, Judge Moorman set out the controlling test in actions of this type:

> "It is not contended that the appellee has so closely simulated appellant's trade-marks as to amount to infringement, nor that there is unfairness in the type, shape or form of appellee's jar and cap. The contention is that it has so simulated in coloring and marking the caps, cartons, and labels of the appellant as to mislead the purchasing public. Simulation amounting to unfair competition does not reside in identity of single features of dress or markings nor in indistinguishability when the articles are set side by side, but is to be tested by the general impression made by the offending article upon the eye of the ordinary purchaser or user. If the general impression which it makes when seen alone is such as is likely to lead the ordinary purchaser to believe it to be the original article, there is an unlawful simulation. * * * It is true that appellee places on its article distinguishing marks by which it could be identified by a careful and discriminating purchaser, but this is not enough, for it is the casual or ordinary purchaser who must be protected, and as to him the test is general appearance." 70 F.2d 384, 385.

Many decisions of other courts have also adopted this test. G. H. Mumm Champagne v. Eastern Wine Corp., 2 Cir., 1944, 142 F.2d 499; Pacific Coast Condensed Milk Co. v. Frye & Co., 1915, 85 Wash. 133, 147 P. 865; Town Taxi Service Corp. v. Green Cab & Brok. Co., Sup.1942, 38 N.Y.S.2d 529, 539; H. A. Metz Laboratories v. Blackman, 1934, 153 Misc. 171, 275 N.Y.S. 407, 416–417. But see Gum, Inc. v. Gumakers of America, Inc., 3 Cir., 1943, 136 F.2d 957; Life Savers Corporation v. Curtiss Candy Co., 7 Cir., 1950, 182 F.2d 4. A case factually very close to the present one is Hi-Land Dairyman's Ass'n v. Cloverleaf Dairy, 1944, 107 Utah 68, 151 P.2d 710, where the court, in a thoroughly documented opinion, recognized a competitors's right to use a milk container identical in physical construction to the plaintiff's, but enjoined the use of deceptively similar ornamental design.

■ In finding that the appellee had deliberately tried "to take advantage of the great amount of advertising done by, the good reputation earned, and the style of package that has been gotten out by plaintiff," the district court necessarily found that the distinctive appearance of the appellant's packages had acquired a secondary meaning. Although as the district court pointed out, "the evidence on that point * * * is not overwhelming," there was nevertheless uncontroverted evidence that the appearance of the appellant's packages had acquired a special significance identifying the appellant's products. See Restatement of the Law, Torts, Section 741. To prove secondary meaning in a trade dress, it was not necessary to show that the public knew the personal identity of the appellant. "[I]t is the article itself and its good qualities which the public appreciates and which cause it to desire to get the genuine article made by the manufacturer who has established its reputation, rather than something made by some one else." Saalfield Pub. Co. v. G. & C. Merriam Co., 6 Cir., 1917, 238 F. 1, 8. See also Upjohn Co. v. Wm. S. Merrell Chemical Co., 6 Cir., 1920, 269 F. 209; 1 Nims, The Law of Unfair Competition and Trade-Marks, 169–71 (4th Ed., 1947).

Since federal jurisdiction in this case was based exclusively upon diversity of citizenship, the law of Michigan is controlling. American Auto Ass'n v. Spiegel, 2 Cir., 1953, 205 F.2d 771; L'Aiglon Apparel, Inc., v. Lana Lobell, Inc., 3 Cir., 1954, 214 F.2d 649, 652; but see Stauffer v. Exley, 9 Cir., 1950, 184 F. 2d 962; Pagliero v. Wallace China Co., 9 Cir., 1952, 198 F.2d 339. See Maternally Yours, Inc. v. Your Maternity Shop, Inc., 2 Cir., 1956, 234 F.2d 538, 540, footnote 1, 545. We find that the law of Michigan is consistent with the general law of unfair competition as reflected in the authorities cited, although the precise question in issue seems not to have come before the courts of that state. Federal Engineering Co. v. Grieves, 1946, 315 Mich. 326, 24 N.W.2d 138; Carbonated Beverages, Inc., v. Wisko, 1941, 297 Mich. 80, 297 N.W. 79.

From what has been said it follows that the appellant is entitled to protection against the appellee's use of packages closely simulating the appellant's packages in arrangement and combination of printed and ornamental design as exemplified in its exhibits 3, 4, 7 and 8. To that end the judgment is set aside and the case remanded for further proceedings.